ERIC A. GROVER (SBN 136080)
eagrover@kellergrover.com
RACHAEL G. JUNG (SBN 239323)
rjung@kellergrover.com
**KELLER GROVER LLP**
1965 Market Street
San Francisco, California 94103
Telephone: (415) 543-1305
Facsimile: (415) 543-7861

SCOT BERNSTEIN (SBN 94915)
swampadero@sbernsteinlaw.com
**LAW OFFICES OF SCOT D. BERNSTEIN,**
**A PROFESSIONAL CORPORATION**
101 Parkshore Drive, Suite 100
Folsom, California  95630
Telephone: (916) 447-0100
Facsimile: (916) 933-5533

*Attorneys for Plaintiff*
M.G., an Individual

DON BIVENS (*pro hac vice forthcoming*)
don@donbivens.com
**DON BIVENS, PLLC**
15169 N. Scottsdale Road, Suite 205
Scottsdale, Arizona 85254
Telephone: (602) 708-1450

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.G., individually and on behalf of a class of similarly situated individuals, | Case No:  3:23-cv-04422-CRB |
| Plaintiff, | CLASS ACTION |
| v. | **FIRST AMENDED COMPLAINT FOR DAMAGES** |
| THERAPYMATCH, INC. d/b/a HEADWAY; and DOES 1 through 100, inclusive, | **DEMAND FOR JURY TRIAL** |
| Defendants. | Complaint Filed:  07/06/23 |

FIRST AMENDED CLASS ACTION COMPLAINT

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiff M.G. ("Plaintiff"), on behalf of himself and a class of similarly situated individuals as defined below, and based on personal knowledge, where applicable, information and belief, and the investigation by counsel, alleges the following against Defendant Therapymatch, Inc. d/b/a Headway ("Defendant" or "Headway").[1]

## INTRODUCTION

1.      This class action lawsuit arises out of Headway's policy and practice of (1) disclosing and sharing with third parties, without users' knowledge or consent, private and personal information, including sensitive medical information, that Headway's website has collected while users navigate Headway's online platform and (2) aiding and abetting Google's (and possibly other third party interceptors') unauthorized intercepting, recording, collection and use of California residents' highly personal and confidential data and communications.

2.      Headway is a private company that markets itself as a software-enabled network of therapists. The Headway online platform claims to provide user-friendly access to a wide range of mental health providers at a lower cost based on insurance coverage. Headway further claims that, by covering administrative tasks like scheduling, credentialing, revenue-cycle management, and billing, the platform helps providers increase the size of their practices.

3.      Plaintiff and Class members who visited the Headway website expected that their personal and sensitive medical information – including without limitation their search parameters detailing their medical concerns and conditions, their gender and ethnic preferences regarding providers, the kind of treatment they sought, and the dates and locations of their medical appointments – would remain private and confidential. Plaintiff and Class members had a reasonable expectation that their interactions and communications through Headway's website

---

[1] M.G. files his claims under a pseudonym to protect against further disclosure of the private and potentially stigmatizing nature of the illness for which he sought treatment through the Headway online platform. Revealing M.G.'s true identity would substantially cause the exact harm that M.G. is seeking to remedy through the filing of this suit, i.e., the disclosure of his personal and sensitive health information.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

would not be shared with any third parties, let alone to *undisclosed* third parties.

4.     Unbeknownst to individuals using the Headway platform, Google Analytics code is embedded into the Headway website.  Through that embedded tracking technology, while Plaintiff and Class members were and are interacting with the Headway website, Google, in real time, is able to and does intercept, eavesdrop upon, and collect Headway website users' sensitive information, including their protected mental health information.  All of this happens without the knowledge of the individual, and certainly without any choice or consent.

5.     Stated another way, as Plaintiff and Class Members are using their various electronic devices to enter their personally identifiable and sensitive mental health information, Google simultaneously is intercepting their private data in real time while it is in transit by using the embedded Google Analytics code.[2]  Moreover, because Headway failed to turn on the IP (internet protocol) anonymization feature on its website, Google was and is able to identify, from the intercepted data, individual Headway website users' IP addresses and to access and obtain their other personally identifiable information.

6.     Plaintiff is informed and believes and on that ground alleges that Google uses the information shared by Headway not only to provide analytics services but also to maintain and improve Google's own services, develop new analytics and marketing services, and measure the effectiveness of advertising on Google's and its partners' sites and applications.

7.     Headway's unauthorized disclosure of Plaintiff's and Class members' personal identifying information and private and sensitive health information, all without adequate notification to Plaintiff and Class members regarding that data sharing, is an invasion of Plaintiff's and Class members' privacy.   It also violates various laws, including the California Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.* ("CMIA"); the California Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.* ("CCPA"); the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"); and the right to privacy under

---

[2] Plaintiff used his cellular telephone to enter his personally identifiable and sensitive mental health information.

the Article 1, § 1, of the California Constitution, which includes privacy as one of six fundamental rights of all Californians.

## PARTIES

### A.      Plaintiff M.G.

8.      Plaintiff M.G. is a natural person and a citizen and resident of California.

9.      In and around May 2023, Plaintiff began using the Headway online platform to search for a mental health professional and to schedule an appointment with a provider of his choice.

10.      While navigating the Headway website on his cellular telephone, Plaintiff provided personal information including his name, address, cellular phone number, health insurance provider, group identification number, and employer.  When prompted by the site to enter his mental health concerns and search parameters, Plaintiff specified that he was looking for therapy related to two specific mental health conditions.[3]

11.      Google was able to intercept Plaintiff's private communications with Headway and did so.  Google intercepted and obtained sensitive information regarding Plaintiff's mental health conditions, the treatment he was seeking, his provider preferences, and his appointment details.  Google was able to carry out that interception as Plaintiff and Class members were transmitting their personally identifiable and sensitive mental health information to Headway through Google Analytics tracking technology embedded in the Headway website.

12.      When Plaintiff chose to seek help from Headway, he did not consent to Google's interception of his personal, confidential, and protected mental health information.  Further, he was unaware of and had no opportunity to opt out of Google's interception.

13.      Upon information and belief, Plaintiff alleges that Google used Plaintiff's information not only to provide analytics services to Headway, but also (1) to improve its own software, algorithms, and other technology and business activities and (2) to provide marketing

[3]  So as not to suffer a further disclosure of personal identifying medical information, Plaintiff is not disclosing his mental health conditions in this public filing.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

services and offerings, such as creating customer profiles, custom audiences, and targeted advertisements.

**B.      Defendant Therapymatch, Inc. d/b/a Headway**

14.      Defendant Therapymatch, Inc. (d/b/a Headway) is a corporation organized under the laws of the State of Delaware with its principal place of business in New York.

15.      Founded in 2019, Headway touts itself as an online platform that makes it easier for healthcare practitioners to accept insurance.  Headway claims that its platform enables prospective patient-clients to search their geographic location for mental health professionals based on the patient-clients' specific concerns and preferences.

16.      Headway's business operations span California and 14 other states.  Headway systematically and continuously does business in California and with California residents and California mental healthcare providers.

17.      Headway's website and Privacy Policy fail to put visitors on notice of Headway's use of Google Analytics tracking technology, Headway's disclosure of personally identifying and sensitive medical information, and Headway's decision to allow Google (and possibly other third-parties) to intercept, in real time, the transmission and dissemination of Plaintiff's and other Class members' personal and private information, including protected mental health information and other health information.

**C.      Doe Defendants**

18.      Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sues those defendants by those fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and on that ground alleges that each of the fictitiously-named defendants is responsible in some manner for the occurrences alleged in this Complaint and that Plaintiff's injuries and damages, as alleged, are proximately caused by those occurrences.

19.      Plaintiff is informed and believes and on that ground alleges that, at all relevant times, each named Defendant and the Doe Defendants were the principals, agents, partners, joint venturers, officers, directors, controlling shareholders, subsidiaries, affiliates, parent

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    corporations, successors in interest, and/or predecessors in interest of some or all of the other

2    Defendants, were engaged with some or all of the other Defendants in a joint enterprise for profit,

3    and bore such other relationships to some or all of the other Defendants as to be liable for their

4    conduct with respect to the matters alleged below.  Plaintiff is informed and believes and on that

5    ground alleges that each Defendant acted pursuant to and within the scope of the relationships

6    alleged above and that each knew or should have known about, and that each authorized, ratified,

7    adopted, approved, controlled, aided and abetted the conduct of all Defendants.

8                                    **JURISDICTION AND VENUE**

9        20.     This Court has subject matter jurisdiction over this action under the California

10   Confidentiality of Medical Information Act, Cal. Civil Code §§ 56, *et seq.*, the California

11   Consumer Privacy Act, Cal. Civil Code §§ 1798.100, *et seq.*, the California Invasion of Privacy

12   Act, Cal. Penal Code §§ 631 and 632, and the California Constitution.

13       21.     This Court has personal jurisdiction over the parties because Defendant has

14   sufficient minimum contacts with this State in that it operates and markets its services throughout

15   the State, including working with patient-clients and mental health care providers in California.

16   Further, a substantial part of the events and conduct giving rise to Plaintiff's claims occurred in

17   the State of California, including Plaintiff's accessing the Headway website, Google's

18   intercepting and collecting of Plaintiff's and Class members' private and sensitive data from

19   Defendant's website, and Google's use of that data for commercial purposes.  Plaintiff's rights

20   were violated in the State of California and those violations arose out of his contact with

21   Defendant from and within California.

22       22.     Venue is proper in this Court because Code of Civil Procedure §§ 395 and 395.5

23   and case law interpreting those sections provide that if a foreign business entity fails to designate

24   with the office of the California Secretary of State a principal place of business in California, it is

25   subject to being sued in any county that a plaintiff desires.  On information and belief, Defendant

26   Therapymatch, Inc. is a foreign business entity and had failed to designate a principal place of

27   business in California with the office of the Secretary of State as of the date this Complaint was

28   filed.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

## FACTUAL ALLEGATIONS COMMON TO THE CLASS

### A.    Google's Website Tracking Technology

23.    Google dominates online search.  One of Google's most lucrative lines of business is its advertising and analytics services.  Google provides a number of tracking tools, including Google Analytics, which are used to collect data from websites and mobile applications into which the tools are embedded and integrated.

24.    In 2005, Google launched the initial version of Google Analytics, which served as a tool for website traffic analysis.  In the years that followed, Google introduced various other technologies with improved tracking functionality.  Examples include Google Analytics Synchronous code and Google Analytics Asynchronous code, which allowed webpages to track commerce transactions with improved data collection and accuracy.  Google continues to update its analytics platform with the launch of additional tracking technologies, including Universal Analytics and Google Analytics 4, both of which provide more in-depth information about users' behavior.

25.    Google markets Google Analytics as a platform that offers "a complete understanding of your customers across devices and platforms" to "uncover new insights and anticipate future customer actions with Google's machine learning to get more value out of your data."[4]  Google Analytics collects data from a website or application to create reports that provide insights into a business.

26.    In order to get that benefit, a website like Headway's must add or embed a small piece of JavaScript measurement code into each page of the site.  The code intercepts a user's interaction in real-time as the user navigates the page, including intercepting any information that the user may input and what links the user clicked.  The measurement code also collects information from the browser, such as the language setting, the type of browser and the device and operating system on which the browser is running.  It even can collect and record the "traffic

---

[4]  *Analytics*, Google Marketing Platform, https://marketingplatform.google.com/about/analytics/ (last visited June 23, 2023).

source," which is what brought the user to the site in the first place.[5]

27.     All of this information, including personally identifying information, is sent simultaneously, while in transit, to Google for processing.  Once Google Analytics processes the data, it aggregates and organizes the data based on particular criteria.  The criteria can be customized by applying filters.

28.     After the data has been processed and stored in the Google database, Google uses the data to generate reports to help analyze the data collected.  This includes reports on acquisition (e.g., information about where the traffic originated and the methods by which users arrived at a site), engagement (what web pages and app screens a user visited), and demographics (a user's age, location, language, gender, and interests expressed when browsing online and engaging in purchase activities).

29.     In addition to using the data collected to provide its services, Google also uses the information shared by sites like Headway's to maintain and improve Google's own services, develop new services, measure the effectiveness of advertising, and personalize content and ads that one sees on Google's and its partners' sites and applications.

**B.     Headway's Use of Google Analytics on its Website**

30.     According to the National Alliance on Mental Health and the Centers for Disease Control, one in five adults in the United States is affected by mental illness each year.  Equivalent to more than 50 million Americans, fifty-five percent (55%) of those affected adults receive no treatment, with many reporting that they did not receive care because they could not afford it.

31.     Headway claims that it addresses this cost issue by offering an online search engine for individuals to find mental health professionals based on the individuals' specific concerns and preferences along with the patient-clients' insurance information.  Headway claims to work with thousands of mental health professionals, including psychiatrists, psychologists,

---

[5] *How Google Analytics Works*, Google Analytics Help, https://support.google.com/analytics/answer/12159447?hl=en&ref_topic=12156336,12153943,2986333,&sjid=47843035158057 0002-NA&visit_id=638186454308763581-3109655727&rd=1 (last visited June 23, 2023).  The "traffic source" could be, *e.g.*, a search engine, an advertisement that the visitor clicked, or an email marketing campaign.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

therapists, counselors, social workers, and psychiatric nurse practitioners. Headway claims that it helps lower the cost of care by building a diverse network of therapists, all of whom accept insurance.

32. The Headway website allows searches of Headway's clinician database based on specified preferences. It also offers the convenience of online booking, with real-time availability information. Headway allows a prospective patient-client to choose between in-person and virtual appointments. Providers can be searched for and selected based on preferences regarding language, race, ethnicity, gender, LGBTQA+ issues, geography, and more. As of late 2022, the company's in-network therapist pool had 20,000 providers with more than 300,000 appointments scheduled through the Headway platform every month.

33. As users navigate the Headway website and platform, Google Analytics, in real-time, surreptitiously is collecting their sensitive information, including patient-clients' private personal and medical information, without the users' knowledge or consent. That information includes but is not limited to (1) the patient's specific concern giving rise to the need for therapy; (2) the type of care the patient is requesting; (3) information concerning the patient's gender and ethnicity preferences regarding the therapist; (4) the address where the patient is seeking therapy sessions; and (5) information regarding the booked therapy session, including the name of the therapist.

34. For example, the Headway website, in real time, automatically captures and transmits to Google the following search parameters entered by a hypothetical user, all without that user's knowledge and consent: the user searched for an "Asian" therapist who specializes in "anxiety and eating disorders," who provides "medication management," and is a provider for "children," located near a specific address in "San Francisco, California."

35. As another example, Headway's website also captures and transmits to Google in real-time the following search parameters entered by a second hypothetical user without that user's knowledge or consent: the user searched for a "transgender or non-binary" therapist who specializes in "bipolar disorder, infertility, PTSD, and addiction," provides "talk therapy," and is located in California.

36. Once an individual chooses a mental health provider from the list of search results and books an appointment with that mental health provider, details regarding the therapist, the type of session (virtual or in-person) and the date of the appointment also are sent to Google.

37. Further, while Google Analytics offers website owners, like Headway, an opt-in IP anonymization feature, *Headway does not enable this anonymization feature on its website*. By using the Google Analytics tool without the anonymized IP feature enabled, Headway is disclosing to and sharing with Google its users' IP addresses. IP addresses are personally identifiable information.

38. Headway also is disclosing private and personal information regarding its users' specific mental health conditions and concerns, all without the users' knowledge and certainly without any choice or consent.

39. In its Privacy Policy linked at the bottom of its web page, Headway falsely asserts that it will share personal information only "with insurance companies or clearinghouses for claims purposes, with other health care providers for treatment or care coordination purposes, or with business partners" to assist Headway in offering its services.[6]

40. But Headway does not disclose that sensitive and personally-identifying medical information is being shared with Google to improve Google's own analytics services, software, algorithms and other technology.  Upon information and belief, the information intercepted by Google, while in transit, also was and is used by Google's advertising offerings to create targeted advertisements and customer profiles, all to enhance Google advertising features.

41. The Headway Privacy Policy also states that *it* (*i.e.*, Headway) will gather and store certain information, which "may include internet protocol (IP) addresses, browser type, internet service provider (ISP), referring/exit pages, operating system, date/time stamp, and/or clickstream data."

42. Headway further discloses that *it* (*i.e.*, Headway) will monitor a user's movement around its website.  But Headway goes far beyond simply "storing" or "monitoring" that tracking

---

[6] *Privacy Policy*, Headway, https://headway.co/legal/privacy (last visited June 23, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

information: Headway simultaneously transmits and discloses personal and protected mental health information to Google.  Nowhere on its website does Headway disclose that it is using Google Analytics.  Nowhere does Headway identify Google, or any other third-party interceptor, as a recipient of users' private communications and confidential mental health information.

      C.     **Plaintiff And Class Members Did Not Consent To Headway's Disclosure Of Their Private Information And Confidential Communications; They Have A Reasonable Expectation Of Privacy In Their User Data.**

43.     Headway does not ask its website visitors, including Plaintiff, whether they consent to having the contents of their private communications containing personal and sensitive mental-health information disclosed to and used by third parties like Google.  Further, Google's analytics software is incorporated seamlessly – and, to users, invisibly – in the background.  That seamless incorporation gave and gives Plaintiff and Class members no way of knowing that Google was and is intercepting their protected health information.  The intercepted information included and includes their medical conditions and concerns, their search parameters, and their preferences regarding a mental health professional and treatment.

44.     Although Headway's Privacy Policy mentions the use of cookies, that minimal mention does not put Headway website users on notice of Headway's use of invasive tracking technology like Google Analytics.

45.     Unlike first-party cookies, Google Analytics (1) simultaneously communicates information to an external server as a user navigates a website; (2) tracks users across devices, meaning that a user's actions on multiple devices all will be included in the information stored regarding that user; (3) is not easily disabled by users; and/or (4) creates a record of all of the information that users provide to and/or receive from the website.  Plaintiff and Class members could not consent to Google's conduct when they were unaware that their confidential communications would be intercepted, stored, and used by Google or any other undisclosed third party.

46.     Plaintiff and Class members had and have a reasonable expectation of privacy in their confidential communications, including *and especially* information related to their medical concerns and conditions, their gender and ethnic preferences regarding providers, the type of

treatment they are seeking, and the dates and locations of their medical appointments. All of that is private, sensitive mental health information.

47.     Privacy studies, such as those by *Pew Research Center*, show that a majority of Americans are concerned about how data is collected about them.[7] Those privacy polls also reflect that Americans consider one of the most important privacy rights to be the need for an individual's affirmative consent before a company collects and shares data regarding that customer or other individual.

48.     Indeed, according to *Consumer Reports*, more than 90% of Americans believe that more should be done to ensure that companies protect consumers' privacy. Further, 64% of Americans believe that companies should be prohibited from sharing data with third parties, while 63% of Americans want a federal law requiring companies to get a consumer's permission before sharing the consumers' information. To that end, 60% of Americans believe that companies should be required to be more transparent about their privacy policies so that consumers can make more informed choices.[8]

49.     Users act in a manner that is consistent with those preferences. For example, when users were asked during a rollout of new iPhone operating software for clear, affirmative consent before allowing companies to track them, 94% of U.S. users chose ***not*** to share their data.

50.     The privacy expectation is even greater when personal and sensitive medical information is at stake. Patient healthcare data in the United States is protected by federal law under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), 42 U.S.C. § 1320d-6, and its implementing regulations, which are promulgated by the Department of Health and Human Services ("HHS").

---

[7]  Brooke Auxier et al., *Americans and Privacy: Concerned, Confused and Feeling Lack of Control Over Their Personal Information*, Pew Research Center (Nov. 15, 2019), https://www.pewresearch.org/internet/2019/11/15/americans-and-privacy-concerned-confused-and-feeling-lack-of-control-over-their-personal-information/

[8]  Benjamin Moskowitz et al., *Privacy Front & Center: Meeting the Commercial Opportunity to Support Consumer Rights*, Consumer Reports in collaboration with Omidyar Network (Fall 2020), https://thedigitalstandard.org/downloads/CR_PrivacyFrontAndCenter_102020_vf.pdf

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

51.     In December 2022, HHS issued a bulletin to "highlight the obligations" of health care providers under the HIPAA Privacy Rule "when using online tracking technologies," such as those used by Headway, which "collect and analyze information about how internet users are interacting with a regulated entity's website or application."[9]   HHS affirmed that health care providers violate HIPAA when they use tracking technologies that disclose an individual's identifying information even if no treatment information is included *and even if the individual does not have a relationship with the health care provider*:

How do the HIPAA Rules apply to regulated entities' use of tracking technologies?

Regulated entities disclose a variety of information to tracking technology vendors through tracking technologies placed on a regulated entity's website or mobile app, including individually identifiable health information (IIHI) that the individual provides when they use regulated entities' websites or mobile apps. This information might include an individual's medical record number, home or email address, or dates of appointments, as well as an individual's IP address or geographic location, medical device IDs, or any unique identifying code. All such IIHI collected on a regulated entity's website or mobile app generally is PHI, even if the individual does not have an existing relationship with the regulated entity and even if the IIHI, such as IP address or geographic location, does not include specific treatment or billing information like dates and types of health care services. This is because, when a regulated entity collects the individual's IIHI through its website or mobile app, the information connects the individual to the regulated entity (i.e., it is indicative that the individual has received or will receive health care services or benefits from the covered entity), and thus relates to the individual's past, present, or future health or health care or payment for care.

52.     The HHS bulletin further stated that HIPAA applies to health care providers' webpages with tracking technologies even on webpages or sites that do not require users to log in:

Tracking on unauthenticated webpages

Regulated entities may also have unauthenticated webpages, which are webpages that do not require users to log in before they are able to access the webpage, such as a webpage with general information about the regulated entity like their location, services they provide, or their policies and procedures. Tracking technologies on

---

[9]  *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

regulated entities' unauthenticated webpages generally do not have access to individuals' PHI; in this case, a regulated entity's use of such tracking technologies is not regulated by the HIPAA Rules. However, in some cases, tracking technologies on unauthenticated webpages may have access to PHI, in which case the HIPAA Rules apply to the regulated entities' use of tracking technologies and disclosures to the tracking technology vendors.   Examples of unauthenticated webpages where the HIPAA Rules apply include:

• The login page of a regulated entity's patient portal (which may be the website's homepage or a separate, dedicated login page), or a user registration webpage where an individual creates a login for the patient portal, generally are unauthenticated because the individual did not provide credentials to be able to navigate to those webpages. However, if the individual enters credential information on that login webpage or enters registration information (e.g., name, email address) on that registration page, such information is PHI. Therefore, if tracking technologies on a regulated entity's patient portal login page or registration page collect an individual's login information or registration information, that information is PHI and is protected by the HIPAA Rules.

• Tracking technologies on a regulated entity's unauthenticated webpage that addresses specific symptoms or health conditions, such as pregnancy or miscarriage, or that permits individuals to search for doctors or schedule appointments without entering credentials may have access to PHI in certain circumstances. For example, tracking technologies could collect an individual's email address and/or IP address when the individual visits a regulated entity's webpage to search for available appointments with a health care provider. In this example, the regulated entity is disclosing PHI to the tracking technology vendor, and thus the HIPAA Rules apply.

53.     Due to the highly personal and sensitive nature of the information that is input onto and shared on the Headway website, Plaintiff and Class members who used the Headway online platform reasonably believed and believe that their interactions and private communications with Headway were and are confidential and would not be recorded, transmitted to third parties, or monitored for later use.  Headway's unauthorized disclosure of highly personal information and Google's surreptitious interception, storage, and use of Plaintiff's and Class members' private medical information violate Plaintiff's and Class members' privacy interests and rights.

**D.      Plaintiff's And Class Member's Personal and Private Information, Including Sensitive Medical Information, Has Economic Value, and Its Unauthorized Disclosure and Interception Have Caused Economic Harm**.

54.     It is well known that there is an economic market for a consumer's personal data, with personal medical information being one of the most valuable categories of data.

55.     In a 2014 article by the Federal Trade Commission, the agency detailed the value of user data, particularly health information, and found that data brokers sell data in sensitive categories for a premium.[10]   The FTC subsequently brought a lawsuit against one of the data brokers for selling location data regarding people who visit abortion clinics for approximately $160 for a week's worth of data.

56.     More recently, in 2021, a report from *Invisibly* noted that "because health care records often feature a more complete collection of the patient's identity, background, and personal identifying information (PII), health care records have proven to be of particular value to criminals."[11]   The article further explained that "while a single social security number might go for $0.53, a complete health care record sells for $250 on average."   Health care data breaches increased by 55% in 2020.

57.     Another recent study asked more than a thousand consumers from around the world what price they would demand of third parties for access to their data.   The study found that passwords would fetch $75.80; health information and medical records average $59.80; and Social Security numbers were valued at $55.70.[12]

58.     Due to the difficulty in obtaining health information, illegal markets also exist for such personal and sensitive information.   NPR reported that health data can be "more expensive than stolen credit card numbers."[13]

59.     Further, individuals can sell or monetize their own data if they choose to do so.   A host of companies and applications such as Nielsen Data, Killi, DataCoup, and AppOptix offer

---

[10]  *Data Brokers, A Call For Transparency And Accountability*, Federal Trade Commission, (May 2014), https://www.ftc.gov/system/files/documents/reports/data-brokers-call-transparency-accountability-report-federal-trade-commission-may-2014/140527databrokerreport.pdf

[11]  *How Much is Your Data Worth?  The Complete Breakdown for 2021*, Invisible, (July 13, 2021), https://www.invisibly.com/learn-blog/how-much-is-data-worth/.

[12]  Jonathan Weicher, *Healthcare hacks—how much is your personal information worth?*, Netlib Security, https://netlibsecurity.com/articles/healthcare-hacks-how-much-is-your-personal-information-worth/ (last visited June 29, 2023).

[13]  Aarti Shahani, *The Black Market For Stolen Health Care Data*, NPR (Feb. 13, 2015, 4:55 am), https://www.npr.org/sections/alltechconsidered/2015/02/13/385901377/the-black-market-forstolen-health-care-data (last visited June 29, 2023).

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    consumers money in exchange for their personal data.

2    60.    Plaintiff's and Class members' private and personal information, including their

3    protected medical information, have a recognized monetary value.  Headway's unauthorized

4    disclosure and Google's interception of that sensitive medical information have deprived Plaintiff

5    and Class members of the economic value of their personal property without proper consideration.

6    **CLASS ACTION ALLEGATIONS**

7    61.    Plaintiff brings this action under California Code of Civil Procedure § 382 on

8    behalf of himself and a class (the "Headway Website Class" or "the Class") defined as follows:

9    All California residents who, while located within California at any time during the

10    applicable limitations period preceding the filing of the Complaint in this matter and through and

11    including the date of resolution, visited and used the Headway website and whose health

12    information and/or other personal data was intercepted by, or disclosed to, Google through

13    Google's tracking technology embedded in the Headway website.

14    62.    Excluded from the Headway Website Class are employees of Defendant and its

15    parents, subsidiaries, and corporate affiliates.  Plaintiff reserves the right to amend or modify the

16    class definition and/or to add sub-classes or limitations to particular issues, where appropriate,

17    based upon subsequently discovered information.

18    63.    This action may properly be maintained as a class action under section 382 of the

19    California Code of Civil Procedure because there is a well-defined community of interest in the

20    litigation, common questions of law and fact predominate over individual issues, and the proposed

21    Class is ascertainable.

22    **Numerosity**

23    64.    The Headway Website Class that Plaintiff seeks to represent contains numerous

24    members and is clearly ascertainable including, without limitation, by using Defendant's records

25    and/or Google's records to determine the size of the Class and to determine the identities of

26    individual Class members.

27    65.    Based on information and belief, the Headway Website Class consists of at least

28    75 individuals.  The Class is so numerous that joinder of all members is impracticable.

---

FIRST AMENDED CLASS ACTION COMPLAINT            16            CASE NO. 3:23-cv-04422-CRB

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

**Typicality**

66.     Plaintiff's claims are typical of the claims of all of the other members of the Headway Website Class, as Plaintiff now suffers and has suffered from the same violations of the law as other putative Class members.  Plaintiff's claims and the Class members' claims are based on the same legal theories and arise from the same unlawful conduct, resulting in the same injury to Plaintiff and all of the other Class members.

**Adequacy**

67.     Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class.  Plaintiff has retained competent counsel with substantial experience in prosecuting complex litigation and class actions.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Headway Website Class members and have the financial resources to do so.  Neither Plaintiff nor his counsel have any interests that are adverse to those of the other Headway Website Class members.

**Commonality and Predominance**

68.     By its unlawful actions, Defendant has violated Plaintiff's and the Class members' privacy rights under the CMIA, the CCPA, the CIPA, and the California Constitution.  The questions raised are, therefore, of common or general interest to the Class members, who have a well-defined community of interest in the questions of law and fact presented in this Complaint.

69.     This action involves common questions of law and fact that predominate over any questions affecting only individual Class members.  Those common questions of law and fact include, without limitation, the following:

(a)     Whether Defendant has or had a policy or practice of disclosing and sharing personal and private information collected on the Headway website, including without limitation protected mental health information, with Google and/or other third parties;

(b)     Whether Defendant has or had a policy or practice of not disclosing to Headway website users that it would share personal and private information, including protected mental health information, with Google and/or other third parties;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

(c)    Whether Defendant has or had a policy or practice of not obtaining Headway website users' consent to share personal and private information, including protected mental health information, with Google and/or other third parties;

(d)    Whether Defendant has or had a policy or practice of allowing the simultaneous transmission of Headway website users' private information and confidential communications, without users' knowledge or consent, to Google and/or other third parties;

(e)    Whether Defendant, through the website tracking technology embedded on its website, has or had a policy or practice of permitting or enabling third parties to intercept, collect, record, and use confidential communications and information, including protected mental health information, submitted and shared by or otherwise obtained from Headway website users;

(f)    Whether Defendant's acts and practices violate or violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq.*;

(g)    Whether Defendant's acts and practices violate or violated the California Consumer Privacy Act, Cal. Civil Code § 1798.100, *et seq.*;

(h)    Whether Defendant's acts and practices violate or violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.*;

(i)    Whether Defendant's acts and practices violate or violated the California Constitution or individual rights arising under the California Constitution; and

(j)    Whether Plaintiff and Class members are entitled to actual, statutory, and/or other forms of damages and other monetary relief.

**Superiority**

70.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all of the members of the Class is impracticable and because questions of law and fact common to the Headway Website Class predominate over any questions affecting only individual members of the Class. Even if every individual member of the Class could afford individual litigation, the court system

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1   could not.  It would be unduly burdensome to the courts if individual litigation of the numerous

2   cases were to be required.  Individualized litigation also would present the potential for varying,

3   inconsistent, or contradictory judgments and would magnify the delay and expense to all parties

4   and to the court system resulting from multiple trials of the same factual issues.  By contrast, the

5   conduct of this action as a class action with respect to some or all of the issues will present fewer

6   management difficulties, conserve the resources of the court system and the parties, and protect

7   the rights of each member of the Headway Website Class.  Further, it will prevent the very real

8   harm that would be suffered by numerous members of the putative Class who simply will be

9   unable to enforce individual claims of this size on their own, and by Defendant's competitors,

10  who will be placed at a competitive disadvantage as their punishment for obeying the law.

11  Plaintiff anticipates no difficulty in the management of this case as a class action.

12      71.    The prosecution of separate actions by individual members of the Headway

13  Website Class would create a risk of adjudications with respect to them that would, as a practical

14  matter, be dispositive of the interests of other members of the Class who are not parties to those

15  adjudications or that would substantially impair or impede the ability of those non-party members

16  of the Class to protect their interests.

17      72.    The prosecution of individual actions by members of the Headway Website Class

18  would run the risk of establishing inconsistent standards of conduct for Defendant.

**FIRST CAUSE OF ACTION**
**Violation of CMIA**
**(California Civil Code §§ 56.06, 56.101, 56.10)**

21      73.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and

22  further alleges as follows.

23      74.    The CMIA defines "medical information" to mean "any individually identifiable

24  information, in electronic or physical form," that is related to a person's "medical history, mental

25  health application information, mental or physical condition, or treatment."  Medical information

26  is "individually identifiable" if it includes or contains "any element of personal identifying

27  information sufficient to allow identification of the individual, such as the patient's name, address,

28  electronic mail address, telephone number, or social security number, or other information that,

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

alone or in combination with other publicly available information, reveals the identity of the individual." Cal. Civ. Code § 56.05(i).

75.     Section 56.05 also defines "mental health application information" to mean any "information related to a consumer's inferred or diagnosed mental health or substance use disorder" that is collected by a mental health digital service. Cal. Civ. Code § 56.05(j).

76.     A "mental health digital service" refers to a "mobile-based application or internet website that collects mental health application information from a consumer, markets itself as facilitating mental health services to a consumer, and uses the information to facilitate mental health services to a consumer." Cal. Civ. Code § 56.05(k). Headway's website and online platform, which offer (1) a search-engine tool to find a mental healthcare provider based on specific concerns and preferences input by the user and (2) online booking for a provider of choice, are a mental health digital service.

77.     The information that is submitted and shared by Headway website users and collected, maintained, and disclosed by Headway, including but not limited to Headway website users' personal contact information, mental health conditions and concerns, and mental health provider and treatment preferences, is medical information because it is identifiable information relating to a patient's medical condition and plan of treatment.

78.     The CMIA also defines and identifies categories of businesses that are deemed to be providers of health care and subject to the same standards of confidentiality with respect to medical information disclosure that are required of a provider of health care. For example, California Civil Code § 56.06(b) states that any "business that offers software or hardware to consumers, including a mobile application or other related device that is designed to maintain medical information in order to make the information available to an individual or health care provider…, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part."

79.     California Civil Code § 56.06(d) further provides that "any business that offers a mental health digital service to a consumer for the purposes of allowing the individual to manage

the individual's information, or for the diagnosis, treatment, or management of a medical condition of the individual, shall be deemed to be a provider of health care subject to the requirements of this part."

80.    As a provider of software and/or a mental health digital service that facilitates the diagnosis, treatment, and management of a medical condition, Headway is deemed to be a provider of health care and is subject to the standards of confidentiality with respect to medical information disclosure that are required by the CMIA.

81.    As alleged in detail above, through the use of Google Analytics website tracking technology embedded on Headway's website, Headway knowingly shared Plaintiff's and Class members' medical information with and disclosed that information to third party Google (and possibly others) without Plaintiff's and Class members' knowledge or consent.  In so doing, Headway violated Cal. Civ. Code § 56.06(e) by failing to maintain the confidentiality of users' private and personal medical information.

82.    Headway also violated Cal. Civ. Code § 56.101(a) by failing to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information. Instead, Headway allowed third-party Google (and possibly others) to intercept and otherwise access Plaintiff's and Class members' private medical information, which Google used for its own purposes including improving and creating new marketing and analytics services for itself.

83.    California Civil Code § 56.10(a) further provides that a provider of health care "shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." Headway violated this section of the CMIA when it disclosed Plaintiff's and Class members' medical information to undisclosed third-party Google (and possibly others) without first obtaining Plaintiff's and the Class members' authorization to do so.  Nowhere on its website does Headway identify Google as a recipient of users' highly personal and sensitive data, including protected mental health information, nor does Headway ask for user consent to share or disclose information to Google.

84.    Defendant's conduct, as described above, violated California Civil Code §§ 56.06,

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

56.101, and 56.10.   Under Civil Code §§ 56.36(b) and (c), Defendant is liable to Plaintiff and each of the Headway Website Class members for statutory damages of $1,000 per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

### SECOND CAUSE OF ACTION
**Aiding and Abetting Violation of the CMIA**
**(California Civil Code §§ 56.36)**

85.   Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

86.   California Civil Code § 56.36(B)(3)(A) prohibits any person or entity other than a licensed healthcare professional from knowingly or willfully obtaining medical information for financial gain.

87.   California Civil Code § 56.36(B)(5) also prohibits any person or entity who is not permitted to receive medical information under the CMIA from knowingly and willfully obtaining, disclosing, or using medical information without written authorization.

88.   Google is an entity that is not a licensed health care professional and is not permitted to receive medical information under the CMIA.   Through its website tracking technology embedded in the Headway website, Google knowingly and willfully received and obtained medical information submitted by Headway website users without their authorization or written consent and, upon information and belief, for Google's own financial gain in violation of California Civil Code § 56.36(B)(3)(A) and (B)(5).

89.   By allowing Google (and possibly others) to intercept and obtain Plaintiff's and Headway Website Class Members' personal data and private communications, including protected medical information, Headway acted intentionally, or, alternatively, with knowledge that Google's misappropriation of Plaintiff's and Class members' medical information was and would be a violation of the CMIA.

90.   Headway provided substantial assistance and encouragement to Google, including but not limited to embedding Google Analytics code on its website and allowing Google to have direct access to Headway website users' private medical information.   By so doing, Headway

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP

1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1    provided the means to accomplish Google's unauthorized receipt, retention and use of Plaintiff's

2    and Headway Website Class members' private medical information.

3    91.    Headway's agreement with Google to use Google Analytics website tracking

4    technology and Headway's unauthorized disclosure to Google of protected medical information

5    collected by the Headway website are substantial factors in causing Google's CMIA violations

6    that are alleged in this Complaint.

7    92.    Defendant's conduct as described above violated California Civil Code § 56.36.

8    As a result, Headway aided and abetted Google's CMIA violations and therefore is liable for the

9    relief sought by Plaintiff and the Headway Website Class.

10   **THIRD CAUSE OF ACTION**
     Violation of CCPA
11   **(California Civil Code § 1798.100(e) and 1798.81.5(b))**

12   93.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and

13   further alleges as follows.

14   94.    In 2018, California consumers voted into law the California Consumer Privacy

15   Act of 2018 ("CCPA").   The CCPA gives California consumers the right to learn what

16   information a business has collected about them, to delete their personal information, to stop

17   businesses from selling their personal information, including using it to target them with ads that

18   follow them as they browse from one website to another, and to hold businesses accountable if

19   they do not take reasonable steps to safeguard protected information.

20   95.    In further protecting consumers' rights, including the constitutional right to

21   privacy, the CCPA states that one purpose and intent of the act is to allow consumers "to control

22   the use of their personal information, including limiting the use of their sensitive personal

23   information, the unauthorized use or disclosure of which creates a heightened risk of harm to the

24   consumer," and to provide consumers with "meaningful options" over how information is

25   collected, used, and disclosed.

26   96.    To that end, businesses are required to inform consumers specifically and clearly

27   about how those businesses collect and use personal information and how consumers can exercise

28   their rights and choices.   The CCPA further provides that businesses should collect consumers'

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

personal information only for specific, explicit, and legitimate disclosed purposes and should not further collect, use, or disclose consumers' personal information for reasons incompatible with those purposes.

97.     These guiding principles are codified in California Civil Code §§ 1798.100, *et seq.* Subsection (a)(1) of § 1798.100 provides that "a business shall not collect additional categories of personal information or use personal information collected for additional purposes that are incompatible with the disclosed purpose for which the personal information was collected without providing the consumer with notice."  Subsection (a)(2) requires the same for sensitive personal information.

98.     California Civil Code § 1798.100(c) further provides that "a business' collection, use, retention, and sharing of a consumer's personal information shall be reasonably necessary and proportionate to achieve the purpose for which the personal information was collected or processed, or for another disclosed purpose that is compatible with the context in which the information was collected, and not further processed in a manner that is incompatible with those principles."

99.     To achieve the CCPA's objectives and safeguard consumers' information, subsection (e) of § 1798.100 requires a business that collects consumer personal information to "implement reasonable security procedures and practices appropriate to the nature of the personal information to protect the personal information from unauthorized or illegal access, destruction, use, modification, or disclosure in accordance with Section 1798.81.5."

100.     Similarly, California Civil Code § 1798.81.5(b) provides that a "business that owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure."

101.     The CCPA defines "personal information" as an individual's "first name or first initial and the individual's last name in combination with any one or more of the following data elements, when either the name or the data elements are not encrypted or redacted": (i) social

security number; (ii) unique identification numbers used to verify an individual's identity, such as driver's license or passport number; (iii) account number or credit or debit card number along with access information; (iv) medical information; (v) health insurance information; (vi) unique biometric data; and (vii) genetic data.  California Civil Code § 1798.81.5(d)(1)(A).

102.   Subsection (d)(2) of § 1798.81.5 further defines "medical information" as "any individually identifiable information, in electronic or physical form, regarding the individual's medical history or medical treatment or diagnosis by a health care professional."

103.   The section also defines "health insurance information," like that provided by Plaintiff, as "an individual's insurance policy number or subscriber identification number, any unique identifier used by a health insurer to identify the individual, or any information in an individual's application and claims history, including any appeals records."  California Civil Code § 1798.81.5(d)(3).

104.   As alleged in detail above, Headway's Privacy Policy does not identify Google as a recipient of users' personal and sensitive medical information, nor does Headway acknowledge its use of Google Analytics or other website tracking tools.  Headway also fails to disclose to its website users that it redirects, shares, and discloses website users' protected mental health information and IP address with Google.

105.   Indeed, Headway's only disclosure of information sharing states that it will share collected information **only** "with insurance companies or clearinghouses for claims purposes, with other health care providers for treatment or care coordination purposes, or with business partners" to assist Headway in offering its services.  Nowhere does the Headway website or Privacy Policy state that Headway will disclose private medical information and confidential communications to Google and for the additional purposes of improving Google algorithms and data points and creating new advertising and analytics technologies, services, and business opportunities.  This goes well beyond the disclosed purposes of facilitating mental health services and is a clear breach of Headway's duties required under Civil Code § 1798.100.

106.   Further, Headway's disclosure to Google of and the unauthorized access by Google to Plaintiff's and Class members' personal information, including medical information

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

and health insurance information, are violations of Headway's duty to implement and maintain reasonable security procedures and practices to safeguard such sensitive information, and thus constitute violations of §§ 1798.100(e) and 1798.81.5(b) of the CCPA.

107.    Under Civil Code § 1798.150(a)(1)(A), Plaintiff and Headway Website Class members each are entitled to the greater of

- their actual damages

or

- statutory damages of not less than $100 and up to $750 per consumer per incident,

plus, under § 1798.150(a)(1)(C), any other relief that the court deems proper.

108.    On July 11, 2023, via FedEx Priority, Plaintiff sent Defendant a California Civil Code § 1798.150(b) notice of non-compliance advising Defendant of its violations of the CCPA. Defendant sent a response dated August 9, 2023 alleging that various remedial measures had been taken and that no further violations would occur.  Defendant's alleged subsequent implementation and maintenance of security procedures do not constitute a cure within the meaning of §1798.150(b).  Therefore, under Civil Code § 1798.150(a)(1)(A), Defendant is liable to Plaintiff and each of the Headway Website Class members for the greater of statutory damages of not less than $100 and up to $750 per consumer per incident or actual damages suffered as a result of Defendant's violations of the CCPA.

## FOURTH CAUSE OF ACTION
### Aiding and Abetting Unlawful Interception
### (Violation of California Penal Code § 631)

109.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

110.    The California Legislature enacted the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq.* ("CIPA"), to address "advances in science and technology [that] have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of

personal liberties and cannot be tolerated in a free and civilized society." *Id.* § 630. CIPA is intended "to protect the right of privacy of the people of this state." *Id.*

111.    To establish liability under section 631(a), Plaintiff need only establish that Defendant, "by means of any machine, instrument, or contrivance, or in any other manner," did or does any of the following:

[i] [I]ntentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

Or

[ii] [W]illfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

Or

[iii] [U]ses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

Or

[iv] [A]ids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

112.    Under § 631, a defendant must show that it had all parties' consent.

113.    Headway and Google are each a "person" for the purposes of CIPA.

114.    Headway systematically and routinely does business in California with California residents and California mental health providers.  Google maintains its principal place of business in California, where it designed, contrived, agreed to, conspired to achieve, effectuated, and/or received the interception and use of the contents of Plaintiff's and Headway Website Class members' private and sensitive communications containing protected mental health information. Additionally, Google intercepted Plaintiff's and Class members' data and confidential communications in California, where Plaintiff, Class members and Google all are located.

115.    Google Analytics website tracking technology, Plaintiff's and Class members'

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

web browsers, and Plaintiff's and Class members' computing and mobile devices are a "machine, instrument, or contrivance…or other manner."

116. At all relevant times, Headway used Google Analytics website tracking technology embedded on its website and allowed Google to tap intentionally and/or make unauthorized connections with the lines of internet communications between Headway, on the one hand, and Plaintiff and Class Members, on the other, all without Headway website users' knowledge or consent.

117. By using Google Analytics and allowing Google, without Plaintiff's and Headway Website Class members' consent, to intercept and access the Headway website users' private information and confidential communications, Headway permitted Google contemporaneously to read or attempt to read, and/or to learn the contents or meaning of, Plaintiff's and Class members' sensitive communications with Headway while the communications were in transit or passing over any wire, line or cable, or were being received at any place within California.

118. Google used, or attempted to use, the private communications and information it received through Google Analytics, including to improve Google's own advertising and analytics services and to create new technologies and offerings.

119. The interception of Plaintiff's and Headway Website Class members' personal and private communications was not authorized or consented to by Plaintiff or Class members. Accordingly, the interception by Google was unlawful and Headway aided and abetted Google's unlawful conduct.

120. Defendant's conduct as described above violated California Penal Code § 631(a). Under Penal Code § 637.2, Plaintiff and each of the Headway Website Class members therefore are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual damages, the amount deemed proper by the California Legislature.

### FIFTH CAUSE OF ACTION
### Unlawful Recording of and Eavesdropping Upon Confidential Communications
### (Violation of California Penal Code § 632)

121. Plaintiff incorporates each allegation set forth above as if fully set forth herein and further alleges as follows.

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

122.   California Penal Code § 632 prohibits using "an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication". . . "intentionally and without the consent of all parties to a confidential communication."

123.   Google's tracking technology embedded into the Headway website is an electronic amplifying or recording device for purposes of § 632.  The Google Analytics code records a user's interaction in real-time as the user navigates the page, including recording any information that the user may input and the links that the user clicked.  The measurement code also collects and records information from the browser, such as the language setting, the type of browser and the device and operating system on which the browser is running.

124.   Section 632 defines a "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto."

125.   Plaintiff and Headway Website Class members' personal and private communications with Headway, including their submission of sensitive medical information such as their mental health conditions and concerns, provider and treatment preferences, and dates and locations of medical appointments, were confidential communications for purposes of § 632.

126.   Because Defendant did not disclose to Plaintiff or to the Headway Website Class members that their private communications containing protected medical information were being recorded and/or eavesdropped upon by Google, Defendant did not obtain, and could not have obtained, Plaintiff's or the Class members' express or implied advance consent to Google's recording or monitoring of those communications.  As a result, Plaintiff and the Headway Website Class members had an objectively reasonable expectation that their confidential communications were not being recorded and/or eavesdropped upon by Google.  That expectation and its objective reasonableness arise, in part, from the objective offensiveness of surreptitiously recording and/or eavesdropping upon people's private communications and the ease with which a disclosure could have been put in place.

127.   Plaintiff and Headway Website Class members expected that their personal and private communications with Headway would not be intercepted and secretly recorded and/or

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

1    eavesdropped upon.

2    128.    By contemporaneously redirecting and transmitting Plaintiff's and Class

3    members' confidential communications through Google Analytics website tracking technology,

4    Headway permitted Google to eavesdrop upon and/or record Headway website users' confidential

5    communications through an electronic amplifying or recording device.  By so doing, Headway

6    violated § 632.

7    129.    At no time did Plaintiff or Class members consent to Headway's and Google's

8    unlawful conduct.  Nor could Plaintiff or Class members reasonably expect that their confidential

9    communications with Headway would be overheard or recorded by Google, especially in the

10   absence of any disclosure in Headway's Privacy Policy.

11   130.    Upon information and belief, Google utilized Plaintiff's and Class members'

12   sensitive personal information, including their protected mental health information, for Google's

13   own purposes, including improving Google's advertising and analytics services offerings and

14   revenue.

15   131.    Defendant's conduct as described above violated California Penal Code § 632.

16   Under Penal Code § 637.2, Plaintiff and each of the Headway Website Class members therefore

17   are entitled to $5,000 in statutory damages per violation, even in the absence of proof of actual

18   damages, the amount deemed proper by the California Legislature.

19   **SIXTH CAUSE OF ACTION**
     **Invasion of Privacy**
20   **(Violation of Art. 1, § 1, California Constitution)**

21   132.    Plaintiff incorporates each allegation set forth above as if fully set forth herein and

22   further alleges as follows.

23   133.    "Privacy" is listed in Article I, Section 1, of the California Constitution as a

24   fundamental right of all Californians.  That section of the Constitution provides: "All people are

25   by nature free and independent and have inalienable rights.  Among those are enjoying and

26   defending life, liberty, acquiring, possessing, and protecting property, and pursuing and obtaining

27   safety, happiness, and privacy."

28   134.    The right to privacy in California's Constitution creates a right of action against

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA 94103
Tel. 415.543.1305 | Fax 415.543.7861

1  private entities such as Headway.  To state a claim for invasion of privacy under the California

2  Constitution, a plaintiff must establish: (1) a legally protected privacy interest; (2) a reasonable

3  expectation of privacy; and (3) an intrusion so serious in nature, scope, and actual or potential

4  impact as to constitute an egregious breach of the social norms.

5      135.   Plaintiff and Class members have a legally protected privacy interest in their

6  private and confidential communications with Headway, including information submitted and

7  shared through their use of the Headway website.  This information, including but not limited to

8  Plaintiff's and Class members' identities, other personal identifying information, patient status,

9  health conditions and concerns, and medical treatment and appointments, are inherently personal

10  and sensitive in nature, and are protected by the right to privacy and confidentiality under the

11  CMIA, HIPAA, CCPA, and CIPA.

12      136.   Plaintiff and Class members had a reasonable expectation of privacy under the

13  circumstances, including that: (i) the private communications disclosed by Headway and

14  intercepted by Google include personal and sensitive information related to Plaintiff's and Class

15  members' identities and mental health conditions and treatment; and (ii) Plaintiff and Class

16  members did not consent to Headway disclosing or otherwise authorize Headway to disclose their

17  private and confidential health information to Google or other third party interceptors, nor did

18  they authorize Google to intercept, store, or use that private information for Google's own benefit

19  and monetary gain.

20      137.   Headway's conduct constituted a serious invasion of privacy that would be highly

21  offensive to a reasonable person in that: (i) the information disclosed by Headway and intercepted

22  and collected  by Google was highly sensitive and personal information protected by the

23  California Constitution and numerous California statutes including the CMIA and the CCPA; (ii)

24  Headway did not have authorization or consent to disclose that personal identifying and protected

25  mental health information to any third party interceptor, including Google, and Google did not

26  have authorization to collect that highly sensitive information; and (iii) the invasion deprived

27  Plaintiff and Class members of the ability to control the dissemination and circulation of that

28  information, which is considered a fundamental right to privacy.  Defendant's conduct constitutes

a severe and egregious breach of social norms.

138.   As a direct and proximate result of Defendant's actions, Plaintiff and Class members have had their privacy invaded and have sustained damages and will continue to suffer damages.

139.   Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will compensate Plaintiff and Class members reasonably for the harm to their privacy interests as well as a disgorgement of profits earned as a result of the intrusions upon Plaintiff's and Class members' privacy.

140.   Plaintiff also seeks such other relief as the Court may deem just and proper.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the members of the Class, prays for the following relief:

a.   An order certifying the Headway Website Class, appointing Plaintiff M.G. as the representative of the Headway Website Class, and appointing counsel for Plaintiff as counsel for the Headway Website Class;

b.   An order declaring that Defendant's actions, as described above, violate California Civil Code §§ 56, *et seq.*;

c.   An order declaring that Defendant's actions, as described above, violate California Civil Code §§ 1798.100, *et seq.*;

d.   An order declaring that Defendant's actions, as described above, violate California Penal Code § 631;

e.   An order declaring that Defendant's actions, as described above, violate California Penal Code § 632;

f.   An order declaring that Defendant's actions, as described above, violate Art. 1, § 1 of the California Constitution;

g.   A judgment for and award of statutory damages of $1,000 per violation under California Civil Code §§ 56.36(b) and (c) to Plaintiff and each of the members of the Headway Website Class;

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

KELLER GROVER LLP
1965 Market Street, San Francisco, CA  94103
Tel. 415.543.1305 | Fax 415.543.7861

h.     A judgment for and award of actual damages, or an award of statutory damages of not less than $100 and up to $750 per consumer per incident, whichever is greater, under California Civil Code § 1798.150(a)(1)(A) to Plaintiff and each of the members of the Headway Website Class;

i.     A judgment for and award of statutory damages of $5,000 per violation under California Penal Code § 637.2 to Plaintiff and each of the members of the Headway Website Class;

j.     A judgment for and award of compensatory damages to Plaintiff and each of the members of the Headway Website Class;

k.     Payment of costs of the suit;

l.     Payment of attorneys' fees under California Code of Civil Procedure § 1021.5;

m.     An award of pre- and post-judgment interest to the extent allowed by law; and

n.     Such other or and further relief as the Court may deem proper.

Respectfully submitted,

Dated:  October 3, 2023          **KELLER GROVER LLP**

By: _____

ERIC A. GROVER
*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully submitted,

Dated:  October 3, 2023          **KELLER GROVER LLP**

By: _____

ERIC A. GROVER
*Attorneys for Plaintiff*