1   TERESA C. CHOW (SBN 237694)
    tchow@bakerlaw.com
2   DYANNE J. CHO (SBN 306190)
    dcho@bakerlaw.com
3   **BAKER & HOSTETLER LLP**
    11601 Wilshire Boulevard, Suite 1400
4   Los Angeles, CA  90025-0509
    Telephone:     310.820.8800
5   Facsimile:     310.820.8859

6   *Attorneys for Defendant*
    THERAPYMATCH, INC. d/b/a HEADWAY
7

8                  **UNITED STATES DISTRICT COURT**

9                  **NORTHERN DISTRICT OF CALIFORNIA**

10

11  M.G., individually and on behalf of a class of     Case No.: 3:23-cv-04422-CRB
    similarly situated individuals,
12                                                      **DEFENDANT THERAPYMATCH, INC.**
                    Plaintiff,                          **D/B/A HEADWAY'S NOTICE OF**
13                                                      **MOTION AND MOTION TO DISMISS**
            v.                                          **PLAINTIFF'S FIRST AMENDED**
14                                                      **COMPLAINT PURSUANT TO FED. R.**
                                                        **CIV. P. 12(B)(6)**
15  THERAPYMATCH, INC. d/b/a HEADWAY;
    and DOES 1 through 100, inclusive,                  Date:          January 12, 2024
16                                                      Time:          10:00 a.m.
                    Defendant.                          Location:      Zoom Video Conference
17
                                                        Complaint Filed:   July 6, 2023
18                                                      Case Removed:      August 25, 2023

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on January 12, 2024 at 10:00 a.m., or as soon thereafter as the matter may be heard via Zoom video conference by the above-titled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant THERAPYMATCH, INC. d/b/a HEADWAY ("Defendant") will and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6).  This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim against Defendant upon which relief can be granted.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and records filed in this action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: November 2, 2023

**BAKER & HOSTETLER LLP**

By:     _/s/ Teresa C. Chow_
TERESA C. CHOW
DYANNE J. CHO

_Attorneys for Defendant_
THERAPYMATCH, INC. d/b/a HEADWAY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................. 11

II.   PLAINTIFF'S ALLEGATIONS ............................................................ 11

III.  LEGAL STANDARD .......................................................................... 13

IV.   ARGUMENT ..................................................................................... 13

      A.    Plaintiff's CMIA Claims Must Be Dismissed.................................... 13

            1.    Plaintiff Fails to Allege Any Medical Information or Medical Records Have Been Transmitted to Google ........................................... 14

            2.    Plaintiff Fails to Allege Anyone Viewed Any Medical Information ........ 15

      B.    Plaintiff Fails to Allege Defendant Aided and Abetted a CMIA Violation .......... 16

            1.    Plaintiff Has Not Alleged Facts Establishing Google Violated the CMIA ........................................................................... 16

            2.    Plaintiff Fails to Allege Defendant Aided and Abetted CMIA Violations ....................................................................... 17

      C.    The CIPA Claims Must Be Dismissed ................................................ 18

            1.    Plaintiff's Section 631 Claim Fails Because Plaintiff Has Failed to Plead Defendant Aided and Abetted Google to Commit Wrongdoing ..... 19

            2.    Plaintiff Fails to Plead Facts Showing "Content Information" in Private Communications Was Disclosed to Google ................................. 20

            3.    Plaintiff Has Not Alleged Any Interception "In Transit" Has Occurred .. 21

            4.    Plaintiff's Section 632 Claim Fails Because Plaintiff Has Not Adequately Alleged "Confidential Communications" Took Place.......... 22

      D.    Plaintiff Has Not Adequately Pled His Constitutional Privacy Claim................. 23

      E.    The CCPA Claim Must Be Dismissed ................................................ 24

V.    CONCLUSION .................................................................................. 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Allen v. Cnty. Of Sonoma*,
  No. 17-cv-00448-YGR, 2017 WL 3593340 (N.D. Cal. Aug. 18, 2017)................................. 24

*Anderson v. Kimpton Hotel & Restaurant Grp., LLC*,
  No. 19-cv-01860-MMC, 2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) .......................... 10, 25

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................... 13, 14, 15, 18

*In re Bank of Am. Cal. Unemploy. Benefits Litig.*,
  No. 21-md-2992-LAB-MSB, 2023 WL 3668535 (S.D. Cal. May 25, 2023) ........................ 25

*Barbour v. John Muir Health*,
  No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023).................................... 8, 16

*Bates v. Arata*,
  No. C 05-3383 SI, 2008 WL 820578 (N.D. Cal. Mar. 26, 2008) ........................................ 24

*Beckington v. Am. Airlines, Inc.*,
  926 F.3d 595 (9th Cir. 2019)................................................................................................ 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................................ 13

*Blanco v. Cnty. Of Kings*,
  142 F. Supp. 3d 986 (E.D. Cal. 2015)................................................................................. 24

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ............................................................................ 10, 23

*Clausing v. S.F. Unified Sch. Dist.*,
  221 Cal. App. 3d 1224 (1990).......................................................................................  10, 24

*Cousins v. Sharp Healthcare*,
  No. 22-cv-2040-MMA (DDL), 2023 WL 448441 (S.D. Cal. July 12, 2023) ...................... 14

*Depot, Inc. v. Caring for Montanans, Inc.*
  915 F.3d 643 (9th Cir. 2019)............................................................................................... 13

*Eisenhower Med. Ctr. v. Super. Ct.*,
  226 Cal. App. 4th 430 (2014)......................................................................................... 14, 15

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) ........................................................................................................ 23

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4

*In re Google, Inc. Privacy Pol'y Litig.*,
   58 F. Supp. 3d 968 (N.D. Cal. 2014) ................................................................. 23

*Graham v. Noom, Inc.*,
   533 F. Supp. 3d 823 (N.D. Cal. 2021) ..................................................... 9, 20, 22

*Hayden v. Retail Equation, Inc.*,
   No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022)...... 10, 24, 25

*Hernandez v. Hillside, Inc.*,
   47 Cal. 4th 272 (2009) ..................................................................................... 23

*In re iPhone Application Litig.*,
   844 F. Supp. 2d 1040 (N.D. Cal. 2012) ......................................................... 10, 24

*Janken v. GM Hughes Elecs.*,
   46 Cal. App. 4th 55 (1996)................................................................................ 17

*Kurowski v. Rush System for Health*,
   No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) ........................... 8, 15

*Low v. Linkedin Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) ................................................. 10, 23, 24

*In re Lynette G.*,
   54 Cal. App. 3d 1087 (1976) ............................................................................ 18

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021)......................................................... 9, 22

*McCoy v. Alphabet, Inc.*,
   No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)..................... 9, 10, 20, 25

*In re Meagan R.*,
   42 Cal. App. 4th 17 (1996)................................................................................ 18

*Neilson v. Union Bank of Cal., N.A.*,
   290 F. Supp. 2d 1101 (C.D. Cal. 2003)......................................................... 9, 17

*People v. Beeman*,
   35 Cal. 3d 547 (1984) ................................................................................. 17, 18

*People v. Laster*,
   52 Cal. App. 4th 1450 (1997)........................................................................... 18

*People v. McCoy*,
   25 Cal. 4th 1111 (2001) ................................................................................... 17

*People v. Pacheco*,
   76 Cal. App. 5th 118 (2022)............................................................................. 17

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

5

*People v. Perez*,
    35 Cal. 4th 1219 (2005) ........................................................................................... 9, 17

*People v. Vaughn*,
    77 Cal. App. 5th 609 (2022) .......................................................................................... 17

*Quinto v. Regents of the Univ. of Cal.*,
    No. 22CV012970, 2023 WL 580365377 (Cal. Super. Ct. Sept. 1, 2023) ........................... 16

*Razuki v. Caliber Home Loans, Inc.*,
    No. 17cv1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ....................... 25

*Regents of Univ. Cal. v. Sup. Ct.*,
    220 Cal. App. 4th 549 (2013) ......................................................................................... 15

*Rodriguez v. Google LLC*,
    No. 20-cv-04688-RS, 2022 WL 214552 (N.D. Cal. Jan. 25, 2022) ................................... 9, 22

*Smith v. Facebook, Inc.*,
    262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd 745 Fed. App'x 8 (9th Cir. 2018) ............ *passim*

*Sutter Health v. Sup. Ct.*,
    227 Cal. App. 4th 1546 (2014) ..................................................................................... 8, 15

*Swarts v. The Home Depot*,
    No. 23-cv-0995-JST, 2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .............................. 10, 23

*Wilson v. Rater8, LLC*,
    No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........................... 14

*Yale v. Clicktale, Inc.*,
    No. 20-cv-07575-LB, 2021 WL 1428400 (N.D. Cal. Apr. 15, 2021) ................................ 9, 20

*Yoon v. Lululemon USA, Inc.*,
    549 F. Supp. 3d 1073 (C.D. Cal. 2021) .......................................................................... 21

**Statutes**

Cal. Civ. Code § 56.10 .......................................................................................................... 13

Cal. Civ. Code § 56.06 .......................................................................................................... 13

Cal. Civ. Code § 56.36 ............................................................................................ 8, 13, 16, 17

Cal. Civ. Code § 56.101 ......................................................................................................... 13

Cal. Civ. Code § 1798.81.5 .................................................................................................... 24

Cal. Civ. Code § 1798.100 ..................................................................................................... 24

Cal. Civ. Code § 1798.150 ....................................................................................... 10, 13, 24, 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

6

Cal. Penal Code § 1 ........................................................................................... 19

Cal. Penal Code § 31 ......................................................................................... 19

Cal. Penal Code § 631 .................................................................................. *passim*

Cal. Penal Code § 632 .................................................................. 9, 13, 22, 23

**Other Authorities**

*About Us*, Headway, https://headway.co/about-us ....................................... 11

California Constitution, Article I, § 1 .............................................. 13, 23, 24

Fed. R. Civ. P. 12(b)(6)............................................................. 13, 17, 25

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

## SUMMARY OF ARGUMENT

2    Plaintiff M.G. ("Plaintiff") brings six claims based on allegations that Defendant

3    Therapymatch, Inc. d/b/a Headway ("Defendant") installed Google Analytics on its website,

4    allowing Google to intercept and collect personally identifiable and medical information about

5    Plaintiff's browsing activities on Defendant's website. Plaintiff has failed to allege facts sufficient

6    to plausibly satisfy key elements of each of his six claims.

7    1.  Plaintiff's California Confidentiality of Medical Information Act ("CMIA") claims fail

8        because:

9        a.  Plaintiff has not pled facts showing that his medical information was transmitted to

10           Google. Plaintiff has only alleged that he visited Defendant's website, searched for

11           providers, and booked an appointment. He otherwise relies only on hypothetical patients

12           and conjecture about how Google Analytics is allegedly configured on Defendant's

13           website. *See, e.g.*, *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal.

14           2017), aff'd 745 Fed. App'x 8 (9th Cir. 2018); *Kurowski v. Rush System for Health*, No.

15           22 C 5380, 2023 WL 2349606, at *5-6 (N.D. Ill. Mar. 3, 2023).

16       b.  Plaintiff has not pled facts showing that anyone at Google actually viewed any medical

17           information, which is a required element of a CMIA claim. *See, e.g.*, *Sutter Health v.*

18           *Sup. Ct.*, 227 Cal. App. 4th 1546, 1557 (2014); *Barbour v. John Muir Health*, No. C22-

19           01693, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023).

20   2.  Plaintiff's CMIA aiding and abetting claim further fails because:

21       a.  Plaintiff has not pled facts showing that Google violated the CMIA, a necessary element

22           of an aiding and abetting claim against Defendant. *See* Cal. Civ. Code § 56.36(c).

23       b.  Plaintiff has not pled facts showing that Defendant "aided and abetted" Google in

24           obtaining Plaintiff's medical information. Plaintiff's thin allegations do not satisfy

25           either the civil or the criminal standard for aiding and abetting liability. *See Neilson v.*

26           *Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (civil standard);

27           *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005) (criminal standard).

28   3.  Plaintiff's California Invasion of Privacy Act ("CIPA") claims fail because:

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

a. Plaintiff again failed to plead facts showing that Defendant aided and abetted Google to violate CIPA. *See id.* This Court has specifically held that similarly-situated healthcare defendants are not involved in the exchange of data between third-party analytics services, such as Google, and website users. *Smith*, 262 F. Supp. 3d at 951.

b. Plaintiff does not allege facts showing that the "contents" of his alleged communications were transmitted to Google. Plaintiff has only alleged that Defendant disclosed "record" information to Google, which is not protected by CIPA. *See, e.g.*, *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021); *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021); *Yale v. Clicktale, Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021).

c. Plaintiff does not plead facts showing Google Analytics intercepted communications "in transit." Cal. Penal Code § 631(a). Courts have held that a software vendor who captures its clients' data, hosts it on the vendor's servers, and allows the clients to analyze the data does not intercept a communication "in transit." *See, e.g.*, *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022); *Smith*, 262 F. Supp. 3d at 951.

d. Plaintiff does not allege facts showing that "confidential communications" took place, or that Defendant—as opposed to Google—eavesdropped on such communications. California courts have developed a presumption that Internet-based communications are not "confidential" for the purposes of Cal. Penal Code § 632. *See, e.g.*, *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014); *Swarts v. The Home Depot*, No. 23-cv-0995-JST, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023).

4. Plaintiff's constitutional invasion of privacy claim fails because Plaintiff has not pled facts showing that a serious invasion of privacy occurred. The data collection and disclosure practices alleged here constitute "routine commercial behavior" and are thus not a serious invasion of privacy. *See Low v. Linkedin Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012). Separately, Plaintiff has

1    brought a claim for money damages, which are not available for Constitutional privacy claims.

2    *See Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990).

3    5.  Plaintiff's California Consumer Privacy Act ("CCPA") claim fails because:

4        a.  The CCPA does not provide for a right of action under any subsection of the CCPA

5            other than Section 1798.150(a). *See also Hayden v. Retail Equation, Inc.*, No. SA CV

6            20-01203-DOC-DFM, 2022 WL 2254461, at *4-5 (C.D. Cal. May 4, 2022). It also does

7            not provide for a right of action outside the data breach context. *See, e.g.*, *McCoy*, 2021

8            WL 405816, at *8.

9        b.  Plaintiff also has not pled any facts related to Defendant's development of data security

10           measures, warranting dismissal. *See, e.g.*, *Anderson v. Kimpton Hotel & Restaurant*

11           *Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019).

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ///

21   ///

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Plaintiff alleges that Defendant installed Google Analytics on its website, allowing Google to "intercept, eavesdrop upon, and collect" information about Plaintiff's browsing activities on Defendant's website, which information Plaintiff claims constitutes "personally identifying information and private and sensitive health information." First Amended Complaint for Damages ("Comp." or "Complaint"), ¶¶ 4, 7, 11. But nothing in the Complaint suggests that provider-patient communications or patient health records have been disclosed to Google, or that any intercepting or eavesdropping has occurred.  Plaintiff's repeat references to "intercept" and "in real time" are conclusory allegations and ignore the fact that, as numerous courts have concluded, the technology at issue here does not intercept anything, in real time or otherwise. Plaintiff has otherwise failed to allege that (1) his medical information was transmitted to or viewed by anyone at Google, (2) "contents" of his alleged communications were transmitted to Google, or (3) "confidential communications" took place.  Plaintiff also has not plausibly alleged that Google intercepted any communications "in transit" (nor can he).  Plaintiff has therefore failed to allege violations of the Confidentiality of Medical Information Act ("CMIA"), the California Invasion of Privacy Act ("CIPA"), or a California constitutional invasion of privacy claim, which also dooms his claims that Defendant "aided and abetted" any violations of the CMIA or CIPA by Google.  The California Consumer Privacy Act ("CCPA") claim fails because Plaintiff has not alleged facts to support the only available private right of action under CCPA, which applies solely in the data breach context. Plaintiff's claims must be dismissed.

## II.    **PLAINTIFF'S ALLEGATIONS**

Defendant's website is an online platform that helps prospective patients find mental health professionals who accept insurance.   Comp. ¶¶ 2, 31; *see also About Us*, Headway, https://headway.co/about-us.  Patients and non-patients alike can access Defendant's public website and conduct searches for mental health professionals in any geographic area, using a variety of filters.  Prospective patients can also create secure Headway accounts (with a login and password) to book appointments with mental health professionals of their choice.  *Id.* ¶ 32.

Plaintiff claims "Google Analytics code is embedded into the Headway website," and

"[t]hrough that embedded tracking technology," Google intercepts a **hypothetical** user's interactions with the website and collects information from the user's browser, resulting in transmission of this information to Google. *Id.* ¶¶ 4-5, 26-28, 33-36. Plaintiff further concludes that Google "uses the information shared by sites *like Headway's* to maintain and improve Google's own services[.]" *Id.* ¶ 29 (emphasis added); *see also id.* ¶ 40. Plaintiff has not alleged a single fact showing Google used information regarding website users to improve its services. Notably, the use of such third-party analytics is very common in healthcare because it gives providers access to critical data on how the public interacts with their websites.

Plaintiff alleges that "[a]s [hypothetical website] users navigate the Headway website and platform, Google Analytics, in real-time, surreptitiously is collecting their sensitive information, including patient-clients' private personal and medical information, without the users' knowledge or consent." *Id.* ¶ 33. According to Plaintiff, once an appointment is booked, "details regarding the therapist, the type of session (virtual or in-person) and the date of the appointment also are sent to Google." *Id.* ¶ 36. Plaintiff freely intersperses "communications" and "medical information" throughout the Complaint to describe information allegedly transmitted to Google and (incorrectly) imply that actual patient records or patient-doctor communications have been or could be shared with Google. *See e.g.*, *id.* ¶¶ 33, 40, 42, 43, 46, 77, 89, 105. Tellingly, Plaintiff does not expressly allege that any patient-doctor communications or medical information regarding any specific patient, let alone himself, was ever disclosed to Google.

As to himself, Plaintiff alleges that he began using Defendant's website in and around May 2023 to search for and schedule an appointment with a mental health professional. *Id.* ¶ 9. While navigating Defendant's website, Plaintiff provided "his name, address, cellular telephone number, health insurance provider, group identification number, and employer" and searched for "therapy related to two specific mental health conditions." *Id.* Plaintiff then summarily concludes that Google intercepted his communications with Defendant and obtained sensitive information about his "mental health conditions, the treatment he was seeking, his provider preferences, and his appointment details." *Id.* ¶ 11. However, the Complaint is devoid of allegations that, if true, would support the conclusion that Google Analytics actually caused Plaintiff's user-inputted information

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    to be transmitted to Google.

2         Plaintiff asserts six causes of action—(1) violation of §§ 56.06, 56.101, and 56.10 of the

3    CMIA; (2) aiding and abetting violation of § 56.36 of the CMIA; (3) violations of §1798.150(a) of

4    the CCPA; (4) aiding and abetting violation of § 631 of the CIPA; (5) violation of § 632 of the

5    CIPA; and (6) violation of the California Constitution, Article I, § 1 (invasion of privacy)—on

6    behalf of a putative class of "[a]ll California residents who, while located within California at any

7    time during the applicable limitations period…visited and used the Headway website and whose

8    health information and/or other personal data was intercepted by, or disclosed to, Google through

9    Google's tracking technology embedded in the Headway website." Comp. ¶ 61.

10   **III.    LEGAL STANDARD**

11        Rule 12(b)(6) dismissal is proper if a complaint fails to state a claim upon which relief can

12   be granted and when the complaint lacks a "cognizable legal theory" or sufficient factual allegations

13   to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.* 915 F.3d 643,

14   652-53 (9th Cir. 2019). To survive dismissal, the complaint "must contain sufficient 'well-pleaded,

15   nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'"

16   *Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556

17   U.S. 662, 679-80 (2009)). Factual allegations must raise a right to relief above the speculative level.

18   *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

19   **IV.    ARGUMENT**

20        **A.    Plaintiff's CMIA Claims Must Be Dismissed**

21        Plaintiff alleges violations of three separate sections of the CMIA: (1) § 56.06(e), which

22   states that "[a]ny business described in this section shall maintain the same standards of

23   confidentiality required of a provider of health care with respect to medical information disclosed

24   to the business;" (2) § 56.101(a), which states that "[a]ny provider of health care…who negligently

25   creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall

26   be subject to the remedies and penalties" in § 56.36(b) and (c); and (3) § 56.10(a), which states that

27   "a provider of health care…shall not disclose medical information regarding a patient of the

28   provider of health care…without first obtaining an authorization[.]"   The CMIA claims are

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

inadequately pled and must be dismissed.

### 1.    Plaintiff Fails to Allege Any Medical Information or Medical Records Have Been Transmitted to Google

All Plaintiff has alleged about himself is that he visited Defendant's website, searched for a provider for his mental health concerns, and booked an appointment. Comp. ¶¶ 9-11.  Plaintiff describes information that ***could*** be disclosed about ***hypothetical*** users, including the "concern giving rise to the need for therapy;" type of care requested; "gender and ethnicity preferences regarding the therapist;" address where the user seeks therapy sessions; and information about the booked session, including the therapist's name.  *See id.* ¶¶ 33-36.  These are not well-pled facts but are legal conclusions that are not entitled to the assumption of truth.  *Iqbal*, 556 U.S. 678-79.

Nor does Plaintiff allege the specific "medical information" he allegedly "disclosed," or what, if any, of the "disclosed medical information" was ever transmitted to Google.  "Medical information" under the CMIA does not encompass "any patient-related information;" rather, it only refers to individually identifiable information that also includes a patient's medical history, condition, or treatment. *See Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014); *see also Cousins v. Sharp Healthcare*, No. 22-cv-2040-MMA (DDL), 2023 WL 448441, at *7-8 (S.D. Cal. July 12, 2023) (granting motion to dismiss CMIA claims on this basis).

The information allegedly transmitted relates to webpages and their contents—mere ***browsing information***—which is insufficient to state a CMIA claim.  *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), aff'd 745 Fed. App'x 8 (9th Cir. 2018) (disclosure of browsing history on public websites did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large").  "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history."  *Id.*  Such information "show[s] only that Plaintiffs searched and viewed publicly available health information[, which] cannot, in and of itself, reveal details of an individual's health status *or medical information*."  *Id.* at App'x 8, 9; *see also Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

LL, 2021 WL 4865930, at *1, 4-5 (S.D. Cal. Oct. 18, 2021) (disclosure of "[p]laintiff's name, cellular telephone number, treating physician names, medical treatment appointment information, and medical treatment discharge dates and times" "is insufficient to allege disclosure of medical information under the CMIA."). At most, Plaintiff alleges disclosure of his possible status as a patient (while conspicuously failing to allege he went to any appointments). However, the fact that someone "was a patient is not in itself medical information." *Eisenhower*, 226 Cal. App. 4th at 436.

Plaintiff further concludes without factual support that certain information could be transmitted to Google simply because he and hypothetical users searched for it or entered it into Defendant's website. Plaintiff's failure to allege how Google Analytics was configured on the website and what information actually was transmitted as a result of those configuration dooms Plaintiff's claims; this is the sort of speculation that "do[es] not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79; *see also Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 2349606, at *5-6 (N.D. Ill. Mar. 3, 2023) (dismissing federal wiretap claim where plaintiff failed to allege any "disclosure of information related to the provision of treatment to her or other similarly situated Rush patients" or any individually identifiable health information" and noting "the hypotheticals provided by [the plaintiff] appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of Rush's public website). Plaintiff has not established that any "medical information" was disclosed, only that Plaintiff searched for and booked an appointment using Defendant's website.

### 2.    *Plaintiff Fails to Allege Anyone Viewed Any Medical Information*

Plaintiff's minimal allegation that the data at issue was processed, aggregated, and organized by Google (Comp. ¶ 27) is insufficient to state a claim. *See, e.g.*, *Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546, 1557 (2014) (no CMIA claim where no allegation that anyone ever actually viewed medical information exposed in a data breach); *Regents of Univ. Cal. v. Sup. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (CMIA claim failed because patient could not "allege her medical records were, in fact, viewed by an unauthorized individual"). In *Sutter Health*, 227 Cal. App. 4th at 1557, computers containing medical records were stolen, but there was no evidence the records were actually viewed. The *Sutter* court explained that "[n]o breach of confidentiality takes

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

place until an unauthorized person views the medical information[;] [w]ithout an actual breach of confidentiality, the loss of possession is not actionable under section 56.101." *Id.*

A California court also recently dismissed a CMIA claim for the same reason:

> [T]he information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was "actually read" within the meaning of Sutter Health. Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, *i.e.*, for marketing purposes. However, in the absence of allegations that the information was "actually read," Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA.

*Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023). Similarly here, there is no allegation that any *person* at Google (or anywhere else) has ever viewed Plaintiff's data. Rather, Plaintiff alleges only that Google has used his data to somehow improve its own offerings. Comp. ¶ 29. However, general allegations about the business model of a tracking technology company, without facts demonstrating how the company has used the specific Plaintiff's data, are insufficient to avoid dismissal. *See Quinto v. Regents of the Univ. of Cal.*, No. 22CV012970, 2023 WL 5803653, at *2 (Cal. Super. Ct. Sept. 1, 2023).

### B.    Plaintiff Fails to Allege Defendant Aided and Abetted a CMIA Violation

Plaintiff claims Defendant aided and abetted Google's alleged violations of Sections 56.36(c)(3)(a) and 56.36(c)(5) of the CMIA.[1]  Plaintiff does not adequately allege Google violated the CMIA in the first instance, and even if he had, Plaintiff has failed to plausibly allege Defendant knowingly gave Google substantial assistance to violate the CMIA.

#### 1.    *Plaintiff Has Not Alleged Facts Establishing Google Violated the CMIA*

Section 56.36(c)(3)(A) of the CMIA imposes liability upon "[a] person or entity, other than a licensed health care professional, who knowingly or willfully obtains or uses medical information in violation of this part for the purposes of financial gain[.]"  Section 56.36(c)(5) of the CMIA imposes liability where "[a] person or entity who is not permitted to receive medical information

---

[1] Plaintiff's Complaint references non-existent sections "56.36(B)(3)(A)" and "56.36(B)(5)" of the California Civil Code (Comp. ¶¶ 86, 87), but it appears Plaintiff intended to refer to California Civil Code sections 56.36(c)(3)(A) and 56.36(c)(5).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

pursuant to this part and who knowingly or willfully obtains, discloses, or uses medical information without written authorization[.]"  According to Plaintiff, "[t]hrough its website tracking technology embedded in the Headway website, Google knowingly and willfully received and obtained medical information submitted by Headway website users without their authorization or written consent and, upon information and belief, for Google's own financial gain in violation of [the CMIA]."  Comp. ¶ 88.  This sole, conclusory allegation does not pass muster under Rule 12(b)(6) because Plaintiff has otherwise failed to plausibly allege Google actually received, viewed, or used any "medical information." *See* Sec. IV.A.1-2 *supra*.

### 2. Plaintiff Fails to Allege Defendant Aided and Abetted CMIA Violations

"Aiding and abetting occurs when one helps another commit a prohibited act." *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 77 (1996).  Thus, civil liability can be imposed on one who aids and abets a statutory violation "if the person (a) knew the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (b) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1118 (C.D. Cal. 2003) (citations omitted).  However, to the extent Plaintiff alleges he suffered economic loss or personal injury as a result of Google's purported violation of the CMIA (though Plaintiff fails to identify the injury he allegedly suffered (*see* Comp. ¶¶ 85-92)), such violation would be "punishable as a misdemeanor."  Cal. Civ. Code § 56.36(a).  Thus, the standard for criminal aiding and abetting liability is applicable here.

The elements of criminal aider and abettor liability are: (a) a crime committed by the direct perpetrator, (b) knowledge of the direct perpetrator's unlawful intent and an intent to assist in achieving those unlawful ends, and (c) conduct by the aider and abettor that in fact assists the achievement of the crime. *People v. Perez*, 35 Cal. 4th 1219, 1225 (2005); *see also People v. Pacheco*, 76 Cal. App. 5th 118, 127 (2022).  Criminal intent is required (*People v. Beeman*, 35 Cal. 3d 547, 556 (1984)), and such mental state "must be *at least that required of the direct perpetrator*." *People v. McCoy*, 25 Cal. 4th 1111, 1118 (2001) (emphasis added); *see also People v. Vaughn*, 77 Cal. App. 5th 609, 625 (2022). Moreover, aiding and abetting is a "specific intent" crime because

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

it "refers to defendant's intent to do some future act…." *People v. Laster*, 52 Cal. App. 4th 1450, 1468 (1997). For such crimes, "one may knowingly assist another to commit a crime, yet lack a specific intent that the crime be committed." *Id.* (citations omitted). "[A]n aider and abettor will 'share' the perpetrator's specific intent when he or she knows the full extent of the perpetrator's criminal purpose and gives aid or encouragement with the intent or purpose of facilitating the perpetrator's commission of the crime." *In re Meagan R.*, 42 Cal. App. 4th 17, 22 (1996) (citing *Beeman*, 35 Cal.3d at 560). "Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense." *In re Lynette G.*, 54 Cal. App. 3d 1087, 1094 (1976).

Plaintiff has failed to satisfy either the civil or criminal standard. Plaintiff has not pled facts showing that Defendant (a) had any knowledge of Google's allegedly unlawful intent to obtain Plaintiff's alleged communications and medical information; (b) harbored an intent to help Google obtain any alleged communications and medical information; (c) had at least the same mental state as Google; (d) knew the "full extent of [Google's alleged] criminal purpose" and gave aid or encouragement with the intent or purpose of facilitating Google's alleged violation of the CMIA; or (e) engaged in conduct that assisted, whether substantially or not, the achievement of the alleged violation, taking into account factors like presence at the "scene" of the CMIA violation, companionship, and conduct before and after the offense. Plaintiff merely concludes that "Headway acted intentionally, or alternatively, with knowledge that Google's misappropriation of Plaintiff's and Class members' medical information was and would be a violation of the CMIA" because Defendant "allow[ed] Google to have direct access to Headway website users' private medical information." Comp. ¶¶ 89-92. These are legal conclusions, not well-pleaded facts, and they should be disregarded. *Iqbal*, 556 U.S. at 679.

### C.    The CIPA Claims Must Be Dismissed

Plaintiff claims Defendant violated both Sections 631 and 632 of CIPA, but Plaintiff does not allege Defendant directly intercepted, used, eavesdropped upon, or recorded the contents of any communication in transit; rather, all of the underlying allegations are directed against Google. The sole factual allegation against Defendant is that it used Google Analytics on its website. *See*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*generally* Comp. ¶¶ 109-31.  Plaintiff's CIPA claims must be dismissed.

## 1.    *Plaintiff's Section 631 Claim Fails Because Plaintiff Has Failed to Plead Defendant Aided and Abetted Google to Commit Wrongdoing*

Defendant's alleged liability under Section 631 of CIPA is entirely derivative of an alleged interception by Google of alleged communications that Plaintiff claims he intended for Defendant in the first place.  Comp. ¶¶ 116-119.  According to Plaintiff, Defendant has violated Section 631 of CIPA by "using Google Analytics and allowing Google . . . to intercept and access the Headway website users' private information and confidential information" (Comp. ¶ 117), thereby "aid[ing] and abett[ing] Google's unlawful conduct" (*id.* ¶ 119).  Thus, Plaintiff is alleging only that Defendant has violated the "aiding and abetting" prong of CIPA, which imposes liability on any "person" who "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above."  Cal. Penal Code § 631(a); Comp. ¶ 111 (subdivision "[iv]").  Plaintiff's claim here fails for the same reason his CMIA aiding and abetting claim fails: even if Google has violated CIPA, Plaintiff must still plausibly plead ***facts*** showing how Defendant actually aided and abetted Google's alleged wrongdoing.

CIPA lives in the California Penal Code (Cal. Penal Code § 631), the primary set of California statutes that define criminal offenses and criminal procedures. *See* Cal. Penal Code § 1. Within this framework, an aider and abettor of a crime is actually a "principal[] in any crime so committed."  Cal. Penal Code § 31.  Although CIPA provides for a private (civil) right of action under Section 637.2(a), there is no statutory exception (or case law) suggesting that Section 31 does not extend to civil claims brought under CIPA, or that the legal standard for aiding and abetting should be the civil one.  Thus, the criminal standard for aider and abettor liability (*see* Section IV.B.2) must be applied with respect to Plaintiff's Section 631 claim, and as discussed in Section IV.B.2, Plaintiff has not pled sufficient facts to support his aiding and abetting claim under CIPA. Plaintiff merely concludes that Defendant "allowed Google to tap intentionally and/or make unauthorized connections with the lines of Internet communications between Headway" and Plaintiff and "permitted Google contemporaneously to read or attempt to read, and/or to learn the contents or meaning of, Plaintiff's and Class members' sensitive communications with Headway."

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

19

1  Comp. ¶¶ 116-17. But these are legal conclusions, not well-pled facts, and this Court has held that

2  similarly-situated healthcare defendants "play[ed] no part in the exchange of data between

3  Facebook and Plaintiffs." *Smith*, 262 F. Supp. 3d at 951. Defendant is aware of no published

4  decision imposing derivative liability under Section 631 of CIPA, particularly in the absence of

5  well-pleaded facts. This Court should not be the first to do so.

6  **2.   Plaintiff Fails to Plead Facts Showing "Content Information" in Private**

7  **Communications Was Disclosed to Google**

8  Even if Plaintiff had adequately alleged aider and abettor liability under Section 631 of

9  CIPA, the claim still fails.  Plaintiff tries to blur the bright line between browsing information and

10  patient records or patient-doctor communications but fails to allege facts showing that substantive

11  contents of communications were ever transmitted to Google, alleging only hypothetical examples

12  of browsing information that *could* be transmitted to Google. *See* Comp. ¶¶ 34-35. But these are

13  not two-way communications between a patient and a medical provider.

14  Courts distinguish between "content" and "record" information.  Content information is the

15  "intended message conveyed by the communication," and is covered by CIPA. *See Graham v.*

16  *Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021). Record information, by contrast, refers to

17  the characteristics of the communication, "generated in the course of the communication, such as

18  the name, address, and subscriber number or identity of a subscriber or customer." *Id.*; *McCoy v.*

19  *Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *14 (N.D. Cal. Feb. 2, 2021)

20  ("[C]ollecting data on when and how often an Android Smartphone user opens and runs non-

21  Google apps and the amount of time spent on the apps is more akin to login activities and *In re*

22  *Zynga* forecloses a CIPA claim predicated on this type of record information."); *Yale v. Clicktale,*

23  *Inc.*, No. 20-cv-07575-LB, 2021 WL 1428400, at *1, *3 (N.D. Cal. Apr. 15, 2021) (dismissing

24  CIPA claim because claim was predicated on non-content information). In *Yale*, the at-issue

25  website used a product that "capture[d] each of Plaintiff's keystrokes and mouse clicks on the

26  [w]ebsite [and] also captured the date and time of the visit, the duration of the visit, Plaintiff's IP

27  address, her location at the time of the visit, her browser type, and the operating system on her

28  device," all of which is not content information. *Yale*, 2021 WL 1428400, at *1.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Similarly here, Plaintiff fails to allege that Defendant disclosed anything more than record information to Google. Plaintiff alleges that Google Analytics generally works[2] by collecting information the user may input, links the user clicked, and information from the browser, such as the language setting, type of browser, and the device and operating system on which the browser is running, as well as "traffic source" information. Comp. ¶ 26. Plaintiff then alleges only that the information that is supposedly captured and transmitted includes search terms used to find a provider, information about a booked therapy session, and IP addresses. *See id.* at ¶¶ 33-37.

This information does not qualify as protected "contents" of a communication under CIPA. *See Yoon v. Lululemon USA, Inc.*, 549 F. Supp. 3d 1073, 1082 (C.D. Cal. 2021) (noting courts have held keystrokes, mouse clicks, pages viewed, shipping and billing information, date and time of website visit, duration of the visit, and IP addresses are record information and not protected by CIPA). Indeed, the information supposedly shared with Google as a result of Google Analytics code on Defendant's website does not contain any substantive medical information, much less any patient-doctor communications. Identifying available doctors by practice area, location, or condition is not a communication about an individual's medical history or future treatment. Moreover, a website user could be looking up this information for a friend or family member; investigating the background of a neighbor, acquaintance, or prospective colleague; conducting research, searching for employment, or virtually any other conceivable reason.

### 3.    *Plaintiff Has Not Alleged Any Interception "In Transit" Has Occurred*

Plaintiff does not—and cannot—plead facts showing that Google intercepted any communication while it was "in transit," as required. *See* Cal. Penal Code § 631(a). For a communication to be intercepted by a third party, it must have been "acquired during transmission." *Id.* If the communication has reached its intended recipient and is then held in electronic storage, it is no longer in transit, and a party is not liable under 631(a). *Id.*

Plaintiff alleges that Google captured data from Defendant's website, stored it, and used the data to improve Google's own offerings (Comp. ¶¶ 114-20), but courts have held that a software

---

[2] Plaintiff notably does not allege this was how Google Analytics was configured, alleging only that "a website *like* Headway's" could be configured this way. *See* Comp. ¶ 26.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

vendor who captures its clients' data, hosts it on the software vendor's servers, and allows the clients to analyze the data does not intercept a communication "in transit." *See Graham*, 533 F. Supp. 3d at 832; *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021) (explaining that "the Ninth Circuit has expressly held that, for an electronic communication to be 'intercepted' it must have been acquired during transmission, not while it is in electronic storage") (internal quotations and citations omitted); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2022 WL 214552, at *2 (N.D. Cal. Jan. 25, 2022) (finding "[p]laintiffs' conclusory statement that communications are intercepted is not enough to make out a § 631 claim."). Furthermore, "[u]sing the word 'intercept' repeatedly is simply not enough without the addition of specific facts that makes it plausible Google is intercepting their data in transit." *Rodriguez*, 2022 WL 214552, at *2. Plaintiff does not otherwise plead facts showing that Google intercepted any communication while it was "in transit," nor can he. Indeed, the use of tracking technologies:

> does not establish that the Healthcare Defendants 'send' information to Facebook, as Plaintiffs suggest. More accurately, they embed code that creates a new connection between a visitor's browser and a Facebook server. The website's decision to embed the code allows that connection to occur, but the connection happens independent. Besides triggering a second GET request in the user's browser, the Healthcare Defendants play no part in the exchange of data between Facebook and Plaintiffs.

*Smith*, 262 F. Supp. 3d at 951. Thus, rather than an interception, two separate communications occur—one between Defendant's website and the user's browser, and one between the user's browser and Google. As a result, no communication is being intercepted in transit under the facts alleged. *See also Mastel*, 549 F. Supp. 3d at 1137 (dismissing CIPA claim on similar grounds.).

### 4.   *Plaintiff's Section 632 Claim Fails Because Plaintiff Has Not Adequately Alleged "Confidential Communications" Took Place*

Plaintiff also alleges Defendant violated Section 632 of CIPA, which penalizes "a person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio[.]" Cal. Penal Code § 632(a). Plaintiff alleges Defendant "permitted ***Google*** to eavesdrop upon and/or record Headway

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

website users' confidential communications through an electronic amplifying or recording device" (Comp. ¶ 128) and therefore fails to allege Defendant eavesdropped upon or recorded any confidential communication. The claim must be dismissed for that reason alone.

Plaintiff's claim also fails because Section 632 applies only to "confidential communications," which are defined as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto." Cal. Penal Code § 632(c). Thus, communications made in any "circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded" are excluded. *Id.*; *see also Flanagan v. Flanagan*, 27 Cal. 4th 766, 776-77 (2002). Furthermore, there is a presumption that internet communications do not give rise to a reasonable expectation of privacy: "Internet-based communications are not 'confidential' within the meaning of [S]ection 632, because such communications can easily be shared…." *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 849 (N.D. Cal. 2014) (collecting cases); *see also Swarts v. The Home Depot*, No. 23-cv-0995-JST, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) (presumption that "such communications do not give rise to the requisite expectation").

### D.    Plaintiff Has Not Adequately Pled His Constitutional Privacy Claim

A California constitutional privacy claim requires a showing of: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy under the circumstances; and (3) conduct by the defendant that amounts to a serious invasion of the protected privacy interest. *See Hernandez v. Hillside, Inc.*, 47 Cal. 4th 272, 286-87 (2009). Since Plaintiff fails to plead facts satisfying any of these elements, his privacy claim should be dismissed.

At a minimum, there is no serious invasion of privacy alleged because Plaintiff has failed to satisfy the "high bar for an invasion of privacy claim" for either the California Constitution or common law. *Low v. Linkedin Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012). Courts that have repeatedly held that the data collection and disclosure practices alleged here constitute "routine commercial behavior" and are thus not a "highly offensive" or serious intrusion of privacy. *See id.* (disclosure of users' browser history to third parties was not highly offensive); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 988 (N.D. Cal. 2014) (collection and disclosure of

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

users' browsing histories was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1060, 1063 (N.D. Cal. 2012) (disclosures of unique device identification number, personal data, and geological information without consent were not an egregious breach of social norms). Even disclosure of highly personal information such as social security numbers is not "highly offensive." *See Low*, 900 F. Supp. 2d at 1025. Plaintiff here has not pled facts establishing a serious invasion of privacy because the information allegedly disclosed is that he visited Defendant's website, searched for providers, and booked appointments.  Comp. ¶ 11.

Separately, Plaintiff cannot bring a private claim for money damages under the California Constitution. *See* Compl. ¶¶ 139-40 (asking for compensation and disgorgement of profits); *Clausing v. S.F. Unified Sch. Dist.*, 221 Cal. App. 3d 1224, 1238 (1990). Courts within the Ninth Circuit have agreed. *See Blanco v. Cnty. Of Kings*, 142 F. Supp. 3d 986, 1000 (E.D. Cal. 2015) ("*Clausing* found that article I, section 1 does not permit a private right of action for money damages…for an alleged violation of the privacy provision in article I, section I…"); *Bates v. Arata*, No. C 05-3383 SI, 2008 WL 820578, at *4 (N.D. Cal. Mar. 26, 2008) (declining to recognize a private right of action for money damages based on article I, section 1's right to privacy under *Clasuing*), *Allen v. Cnty. Of Sonoma*, No. 17-cv-00448-YGR, 2017 WL 3593340, at *5 (N.D. Cal. Aug. 18, 2017) (granting motion to dismiss California constitutional privacy claim for lack of damages remedy). Plaintiff's constitutional privacy claim should be dismissed.

### E.    The CCPA Claim Must Be Dismissed

Plaintiff's CCPA claim, which is based only on alleged violations of California Civil Code sections 1798.100(e) and 1798.81.5(b) (Comp. ¶¶ 104-106), must be dismissed with prejudice because the CCPA does not provide for a right of action under any subsection of the CCPA other than California Civil Code section 1798.150(a).  Cal. Civ. Code § 1798.150(c) ("The cause of action established by this section…shall not be based on violations of any other section of this title. Nothing in this title shall be interpreted to serve as the basis for a private right of action under any other law."); *see Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461, at *4-5 (C.D. Cal. May 4, 2022) (dismissing CCPA claim with prejudice because no private right of action for claims brought under sections 1798.100(b), 110(c), and 115(d)).  Courts

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

therefore decline to recognize private rights of action under CCPA outside of the data breach context. *See, e.g.*, *McCoy*, 2021 WL 405816, at *8 (dismissing CCPA claim where no allegations of a security breach); *Hayden*, 2022 WL 2254461, at *5 (dismissing CCPA claim because "disclosure of consumers' non-anonymized data was not a result of a failure to implement and maintain reasonable security measures, but was a business decision to combat retail fraud").

Here, Plaintiff has not alleged that any kind of data breach has occurred. *See generally* Comp. Plaintiff does not allege his "nonencrypted and nonredacted personal information" or "email address in combination with a password or security question and answer" were "subject to an unauthorized access and exfiltration, theft, or disclosure as a result of [Defendant's] violation of the duty to implement and maintain reasonable security procedures and practices," as Section 1798.150(a) requires. CCPA claims are also dismissed where, as here, they are not supported "with any facts about [Defendant's] protocols or actions it took when choosing appropriate security measures." *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361, at *1-2 (S.D. Cal. Nov. 15, 2018); *Anderson v. Kimpton Hotel & Restaurant Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing CCPA claims where plaintiffs failed to allege facts showing Defendant failed to implement and maintain reasonable security procedures); *In re Bank of Am. Cal. Unemploy. Benefits Litig.*, No. 21-md-2992-LAB-MSB, 2023 WL 3668535, at *14 (S.D. Cal. May 25, 2023) (dismissing CCPA claim because "bare allegations" that suggested only a "possibility" that the defendant's collection, transmission, and storage may have been the reason the plaintiffs' data was stolen, were insufficient to survive 12(b)(6) motion). Here, Plaintiff concludes, with no supporting allegations about Defendant's security measures, that Defendant's alleged disclosure to Google and "unauthorized access by Google to Plaintiff's and Class members' personal information…are violations of Headway's duty to implement and maintain reasonable security procedures and practices." Comp. ¶¶ 104-06. This is simply not enough to survive Rule 12(b)(6), and the CCPA claim must be dismissed.

## V.    **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

1  Dated: November 2, 2023            **BAKER & HOSTETLER LLP**

2

3                                      By:     */s/ Teresa C. Chow*
                                              TERESA C. CHOW
                                              DYANNE J. CHO
4

5                                      *Attorneys for Defendant*
                                       THERAPYMATCH, INC. d/b/a HEADWAY

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28