TERESA C. CHOW (SBN 237694)
tchow@bakerlaw.com
DYANNE J. CHO (SBN 306190)
dcho@bakerlaw.com
**BAKER & HOSTETLER LLP**
11601 Wilshire Boulevard, Suite 1400
Los Angeles, CA  90025-0509
Telephone:     310.820.8800
Facsimile:     310.820.8859

*Attorneys for Defendant*
THERAPYMATCH, INC. d/b/a HEADWAY

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| M.G., individually and on behalf of a class of similarly situated individuals,<br><br>    Plaintiff,<br><br> v.<br><br>THERAPYMATCH, INC. d/b/a HEADWAY; and DOES 1 through 100, inclusive,<br><br>    Defendant. | Case No.: 3:23-cv-04422-AMO<br><br>**DEFENDANT THERAPYMATCH, INC. D/B/A HEADWAY'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>*[Filed concurrently with Appendix of Authority, and [Proposed] Order]*<br><br>Date:    April 10, 2025<br>Time:    2:00 p.m.<br>Location:  Courtroom 10<br><br>Third Amended<br>Complaint Filed: November 6, 2024 |

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

**TO THE HONORABLE COURT, AND TO PLAINTIFF AND HIS COUNSEL OF RECORD HEREIN:**

**NOTICE IS HEREBY GIVEN** that on April 10, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-titled Court located at 450 Golden Gate Avenue, San Francisco, CA 94102, Defendant THERAPYMATCH, INC. d/b/a HEADWAY ("Defendant") will and hereby does move the Court to dismiss the above-captioned action pursuant to Federal Rule of Civil Procedure 12(b)(6). This Motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that Plaintiff fails to state a claim against Defendant upon which relief can be granted.

The Motion is based upon this Notice, the accompanying Memorandum of Points and Authorities, all pleadings, papers and records filed in this action, and such other oral argument and documentary evidence as may be presented at or before the time of adjudication of this Motion.

Dated: December 6, 2024                          **BAKER & HOSTETLER LLP**

                                                By:      _/s/ Teresa C. Chow_
                                                         TERESA C. CHOW
                                                         DYANNE J. CHO

                                                *Attorneys for Defendant*
                                                THERAPYMATCH, INC. d/b/a HEADWAY

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## <u>TABLE OF CONTENTS</u>

**I.**    INTRODUCTION .............................................................................................. 8

**II.**   PLAINTIFF'S ALLEGATIONS ....................................................................... 8

**III.**  LEGAL STANDARD ...................................................................................... 11

**IV.**   ARGUMENT .................................................................................................. 12

    A.    Plaintiff's CMIA Claim Must Be Dismissed ........................................ 12

        1.    Plaintiff Fails to Allege Any Medical Information or Medical Records Have Been Transmitted to Google ............................................................. 12

        2.    Plaintiff Fails to Allege Anyone Viewed Any Medical Information ........ 16

    B.    The CCPA Claim Must Be Dismissed ................................................... 17

        1.    Defendant is Exempt from the CCPA ...................................................... 17

        2.    Defendant is Not a "Business" Governed by the CCPA .......................... 18

        3.    Plaintiff Has Failed to Plead a Personal Information Security Breach ..... 20

        4.    Plaintiff Fails to Allege Damages Under the CCPA ................................. 24

**V.**    CONCLUSION ............................................................................................... 25

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Cases</u>

3

*Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865 (N.D. Tex. June 20, 2024)
.................................................................................................................................................. 10

4

*Anderson v. Kimpton Hotel & Restaurant Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308
(N.D. Cal. Aug. 8, 2019)............................................................................................................ 23

5

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................... 12, 15, 24

6

*B.K. v. Desert Care Network*, No. 223-cv-05021-SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1,
2024) ........................................................................................................................................... 13

7

*Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023)
.................................................................................................................................................. 17

8

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595 (9th Cir. 2019)..................................................... 12

9

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................... 12

10

*Chen v. JPMorgan Chase Bank, N.A.*, No. 2:23-cv-10874-SPG-AS, 2024 WL 4004999 (C.D. Cal.
Aug. 20, 2024) ............................................................................................................................ 23

11

*Depot, Inc. v. Caring for Montanans, Inc.* 915 F.3d 643 (9th Cir. 2019)....................................... 11

12

*Doe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024)
............................................................................................................................................. 16, 24

13

*Doe v. Davita Inc.*, No. 23-cv-01424-AJB-BLM, 2024 WL 1772854 (S.D. Cal. Apr. 24, 2024) 13,
15

14

*Doe v. MKS Instruments, Inc.*, No. SACV 23-00868-CJC (KESx), 2023 WL 9421115 (C.D. Cal.
Nov. 3, 2023) ........................................................................................................................ 14, 25

15

*Doe v. N. Cal. Fertility Medical Ctr.*, No. 22-cv-01861-DAD-JDP, 2024 WL 246178 (E.D. Cal.
Jan. 23, 2024)........................................................................................................................... 17

16

*Durgan v. U-Haul Int' Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622 (D. Ariz. Oct. 27,
2023) ......................................................................................................................................... 21

17

*Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430 (2014) ............................................. 12

18

*Gershfeld v. Teamviewer US, Inc.*, No. SACV 21-00058-CJC(ADSx), 2021 WL 3046775 (C.D.
Cal. June 24, 2021) .................................................................................................................... 22

19

*Gibson v. Planned Parenthood Federation of America, Inc.*, No. 3:23-cv-04529-JD, 2024 WL
4251892 (N.D. Cal. July 2, 2024)............................................................................................... 13

20

*Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34 (D. Ariz. 2021) .................................... 23, 25

21

*Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461 (C.D. Cal.
May 4, 2022) ................................................................................................................... 20, 22, 24

22

*In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024) ............. 18, 19, 20

23

*In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573 (N.D. Ill. 2022).................... 21

24

*In re Bank of Am. Cal. Unemploy. Benefits Litig.*, No. 21-md-2992-LAB-MSB, 2023 WL
3668535 (S.D. Cal. May 25, 2023) ............................................................................................. 22

25

*In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033-RS, 2024 WL 3416511 (N.D.
Cal. July 15, 2024)...................................................................................................................... 22

26

*In re Blackbaud Inc. Cust. Data Breach Litig.*, No. 3:20-mn-02972-JMC, 2021 WL 3568394
(D.S.C. Aug. 12, 2021) ............................................................................................................... 19

27

28

4

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*In re Eureka Casino Breach Litig.*, No. 2:23-cv-00276-CDS-BNW, 2024 WL 4253198 (D. Nev. Sept. 19, 2024) ................................................................................................................ 21, 23

*In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................................................................................................... 25

*In re NCB Mgmt. Servs., Inc. Date Breach Litig.*, No. 23-1236, 2024 WL 4160349 (E.D. Pa. Sept. 11, 2024) ...................................................................................................................... 18, 19, 20

*In re San Francisco 49ers Data Breach Litig.*, No. 3:22-cv-05138-JD, 2024 WL 3849336 (N.D. Cal. Aug. 15, 2024) ..................................................................................................................... 21

*In re Sequoia Benefits and Ins. Data Breach Litig.*, No. 22-cv-08217-RFL, 2024 WL 1091195 (N.D. Cal. Feb. 22, 2024)............................................................................................................. 25

*In re TikTok, Inc., Cons. Priv. Litig.*, 617 F. Supp. 3d 904 (N.D. Ill. 2022).................................. 21

*In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147, 2022 WL 561734 (S.D.N.Y. Feb. 24, 2022) ............................................................................................................................................. 24

*K.L. v. Legacy Health*, No. 3:23-cv-01886-SI, 2024 WL 4794657 (D. Or. Nov. 14, 2024) ......... 15

*Karter v. Epiq Systems, Inc.*, No.: SACV 20-01385-CJC (KESx), 2021 WL 4353274 (C.D. Cal. July 16, 2021)................................................................................................................................. 20

*Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023) .................................................................................................................................................... 16

*Lurry v. PharMerica Corp*, No. 3:23-cv-297-RGJ, 2024 WL 2965642 (W.D. Ky. June 12, 2024) .................................................................................................................................................... 18

*Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2024 WL 3226793 (N.D. Cal. June 28, 2024) ............................................................................................................................. 17

*McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ... 20, 22

*Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013, 2021 WL 6882377 (N.D. Cal. May 6, 2021).. 21

*Mullinex v. US Fertility, LLC*, No. SACV 21-00409-CJC (KESx), 2021 WL 4935975 (C.D. Cal. Apr. 21, 2021) .............................................................................................................................. 18

*Quinto v. Regents of the Univ. of Cal.*, No. 22CV012970, 2023 WL 5803653 (Cal. Super. Ct. Sept. 1, 2023) ................................................................................................................................ 17

*Ramos v. Wells Fargo Bank, N.A.*, No. 23-CV-0757-L-BGS, 2023 WL 5310540 (S.D. Cal. Aug. 17, 2023) ....................................................................................................................................... 21

*Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) .............................................................................................................................. 23

*Regents of Univ. Cal. v. Sup. Ct.*, 220 Cal. App. 4th 549 (2013).................................................. 16

*Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 2873482 (C.D. Cal. June 5, 2024)................. 17

*Rossi v. Sequoia Union Elementary School*, 94 Cal. App. 5th 974 (Ct. App. 2023) ..................... 13

*Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd 745 Fed. App'x 8 (9th Cir. 2018) ...................................................................................................................................... 15, 19

*Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898 (S.D. Cal. 2020)............................. 21

*Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546 (2014)............................................................. 16

*Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-CV-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022)......................................................................................................... 13, 14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Tate v. EyeMed Vision Care, LLC*, Nos. 1:21-cv-36, 2023 WL 6383467 (S.D. Ohio Sept. 29, 2023) ................................................................................................................................ 18

*Udo v. Wells Fargo Bank, N.A.*, No. 23-cv-02935-J SW, 2023 WL 8600791 (N.D. Cal. Dec. 12, 2023) ....................................................................................................................... 22, 24

*Valladolid v. Memorial Health Servs.*, No. 23STCV05059 (Cal. Super. Ct. Nov. 20, 2024) ....... 15

*Vigil v. Muir Medical Grp. IPA, Inc.*, 84 Cal. App. 5th 197 (2022) ............................................ 17

*Wilson v. Rater8, LLC*, No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021) ........................................................................................................................... 13, 14

<u>Statutes</u>

Cal Civ Code § 56.05 ................................................................................................................... 12

Cal. Civ. Code § 1798.100 ..................................................................................................... 17, 18

Cal. Civ. Code § 1798.140 ..................................................................................................... 18, 21

Cal. Civ. Code § 1798.145 ........................................................................................................... 17

Cal. Civ. Code § 1798.150 ..................................................................................................... passim

Cal. Civ. Code § 1798.81.5 ............................................................................................... 17, 18, 24

Cal. Civ. Code § 56.06 ................................................................................................................. 12

Cal. Civ. Code § 56.10 ................................................................................................................. 12

Cal. Civ. Code § 56.101 ............................................................................................................... 12

Cal. Civ. Code § 56.36 ................................................................................................................. 12

<u>Other Authorities</u>

*About Us*, Headway, https://headway.co/about-us ........................................................................ 8

*Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Department of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html ............................................ 11

<u>Rules</u>

Fed. R. Civ. P. 12(b)(6) ............................................................................................................ 11, 24

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

## SUMMARY OF ARGUMENT

Plaintiff M.G. ("Plaintiff") brings five claims based on allegations that Defendant Therapymatch, Inc. d/b/a Headway ("Defendant") installed Google Analytics on its website, allowing Google to intercept and collect Plaintiff's personally identifiable and medical information. Plaintiff has failed to plead his California Confidentiality of Medical Information Act ("CMIA") claim and his California Consumer Privacy Act ("CCPA").

Plaintiff's CMIA claim fails because he has not sufficiently alleged his medical information was transmitted to Google. *See Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430 (2014); *Wilson v. Rater8, LLC,* No. 20-cv-1515-DMS-LL, 2021 WL 4865930 (S.D. Cal. Oct. 18, 2021); *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-CV-0725-BAS-WVG, 2022 WL 16985001 (S.D. Cal. Nov. 16, 2022); *Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943 (N.D. Cal. 2017), aff'd 745 Fed. App'x 8 (9th Cir. 2018); *Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 2349606 (N.D. Ill. Mar. 3, 2023); *Doe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248 (C.D. Cal. Jan. 29, 2024). Plaintiff has also not sufficiently alleged that anyone at Google viewed any medical information. *See Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546 (2014); *Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967 (Cal. Super. Ct. Jan. 5, 2023).

Plaintiff's CCPA claim fails because 1. Plaintiff is exempt from the CCPA (Cal. Civ. Code §§ 1798.145(c)(1)(B), 1798.146(a)(2)-(3), 1798.81.5 (e)); 2. Plaintiff is not a "business" under the CCPA (*In re NCB Mgmt. Servs., Inc. Date Breach Litig.*, No. 23-1236, 2024 WL 4160349 (E.D. Pa. Sept. 11, 2024); *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623 (N.D. Cal. 2024)); 3. Plaintiff has failed to plead a personal information security breach (*McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021); *Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461 (C.D. Cal. May 4, 2022); *Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34 (D. Ariz. 2021)); 4. Plaintiff has failed to allege damages (*In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147, 2022 WL 561734, at *6-7 (S.D.N.Y. Feb. 24, 2022); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34 (D. Ariz. 2021); *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019)).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

I.    **INTRODUCTION**

In his Third Amended Complaint ("TAC"), Plaintiff renews his allegations that Defendant's use of Google Analytics allowed Google to "intercept, eavesdrop upon, and collect" information about Plaintiff's browsing activities on Defendant's website. TAC ¶ 4. Plaintiff claims this information constitutes "personal identifying information and private and sensitive health information." *Id.* ¶¶ 7, 13. Even after amending the Complaint for a third time, the TAC is conspicuously lacking in allegations that Plaintiff took a single action other than search Defendant's database for potential mental health providers. Plaintiff does ***not*** allege that he (a) created an account on Defendant's website; (b) chose, contacted, or communicated with a single provider from Defendant's website; or (c) scheduled or attended an appointment with any mental health or medical provider. Most importantly, he does not allege that any appointment notes, test results, provider-patient communications, or other health records were disclosed to, or viewed by, anyone at Google. *Id.* ¶¶ 9-13. Without these allegations, Plaintiff's Confidentiality of Medical Information Act ("CMIA") claim, already dismissed once by this Court, fails. *See* ECF No. 44 at 4-5.  Plaintiff's California Consumer Privacy Act ("CCPA") claim also suffers from serious pleading deficiencies. Defendant is exempt from the CCPA, and Plaintiff also fails to allege several key elements of a "Personal Information Security Breach." Accordingly, Plaintiff's CCPA claim also fails.

II.    **PLAINTIFF'S ALLEGATIONS**

Plaintiff's allegations regarding Defendant's use of Google Analytics have not substantially changed in the TAC. Plaintiff alleges that Defendant's website is an "online search engine" that helps prospective patients find mental health providers who accept insurance. TAC ¶¶ 2, 33; *see also About Us*, Headway, https://headway.co/about-us. Registered patients and non-patients alike can conduct searches on Defendant's public website for mental health providers. Users can search and filter based on parameters such as the provider's specialty, like depression, trauma, or relationship issues; the type of treatment the provider offers (medication management or talk therapy); the health insurance the provider accepts; and the gender, ethnicity, location, and availability of the provider. TAC ¶¶ 3, 34-37. Users can input their health insurance information to obtain a cost estimate from different providers. *Id.* ¶¶ 2, 17, 33-34. Prospective patients can also

create secure Headway accounts (with a login and password) to book appointments. *Id.* ¶ 34.

Plaintiff's core allegation is that "Google Analytics code is embedded into the Headway website," and "[t]hrough that embedded tracking technology," Google intercepts a ***hypothetical*** user's interactions with the website and collects information from the user's browser, resulting in transmission of this information to Google. *Id.* ¶¶ 4-5, 28-30, 35-38. Plaintiff further concludes that Google "uses the information shared by sites ***like Headway's*** to maintain and improve Google's own services[.]" *Id.* ¶ 31 (emphasis added); *see also id.* ¶ 42. However, Plaintiff has not alleged any facts showing Google used information about website users to improve its services.

Plaintiff alleges that "[a]s [hypothetical website] users navigate the Headway website and platform, Google Analytics, in real-time, surreptitiously is collecting their sensitive information, including patient-clients' private personal and medical information, without the users' knowledge or consent." *Id.* ¶ 35. According to Plaintiff, once an appointment is booked, "details regarding the therapist, the type of session (virtual or in-person) and the date of the appointment also are sent to Google." *Id.* ¶ 38. Plaintiff freely intersperses "communications" and "medical information" throughout the TAC to describe the information allegedly transmitted to Google, incorrectly implying that actual patient records or patient-provider communications were shared with Google. *See e.g.*, *id.* ¶¶ 35, 42, 44, 45, 48, 98. Tellingly, Plaintiff does not expressly allege that any  actual medical information regarding any specific patient, let alone himself, was ever disclosed to Google.

Plaintiff alleges that he began using Defendant's website in and around May 2023 to search for a mental health provider. *Id.* ¶ 9. Notably, Plaintiff no longer alleges he ever scheduled an appointment through Defendant's website. *See* ECF No. 50 at 7:8-9; 8:9 (removing allegations that Plaintiff scheduled an appointment, and that Plaintiff's appointment details were disclosed to Google). Rather, Plaintiff's allegations solely focus on information he entered as part of the "search process" to find a mental health provider. *Id.* ¶ 11. These search parameters allegedly included that Plaintiff was experiencing "stress, trauma, and past abuse;" "depression, anxiety, stress, and lack of sleep;" and "stress at work and marital issues with his spouse." *Id.* Plaintiff also provided additional "search parameters" that he was "looking for general therapy," "offered online" "with a female therapist of color," "located within his local area." *Id.* ¶ 12.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Plaintiff also alleges that he provided demographic information, including his "name, address, cellular telephone number, age, marital status, ethnicity, religion, occupation, employer, and income range." *Id.* ¶ 9. As proof of this information, Plaintiff allegedly uploaded a photograph of his California driver's license on Defendant's website. *Id.* ¶ 10. The driver's license allegedly also included Plaintiff's "date of birth, hair color, eye color, height, and weight." *Id.* As a part of the search process, Plaintiff also allegedly provided his medical insurance information, including a picture of his medical insurance card and a copy of his HSA/FSA card. *Id.* Based on this usage of Defendant's search engine, Plaintiff summarily concludes that Google intercepted his alleged "communications" with Defendant and "obtained sensitive information" about his "mental health symptoms and conditions, his reasons for seeking treatment, the treatment that he was seeking, and his provider preferences." *Id.* ¶ 13. This information is not medical information. Based on the allegations in the TAC, these search parameters are not connected to any account on Defendant's website, any specific provider listed on Defendant's website, or any actual patient-provider communications or mental health records. *See generally id.* Plaintiff did not even make, let alone attend, an appointment through Defendant's website. *See* ECF No. 50 at 7:8-9; 8:9.

In his fact section, Plaintiff repeats without amendment his discussion of the December 2022 Health and Human Services Bulletin ("Bulletin") regarding the application of the HIPAA Privacy Rule to online tracking technologies. TAC ¶¶ 53-55. Plaintiff claims that this Bulletin "affirmed that health care providers violate HIPAA when they use tracking technologies that disclose an individual's identifying information even if no treatment information is included *and even if the individual does not have a relationship with the health care provider....*" TAC ¶ 53. The reliance on the Bulletin is improper and misleading to the Court. HHS updated this Bulletin on March 18, 2024, and portions of the bulletin related to unauthenticated public webpages (*i.e.*, websites that do not require login credentials) were then vacated by the Northern District of Texas on June 20, 2024. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-01110-P, 2024 WL 3075865, at *17 (N.D. Tex. June 20, 2024). Plaintiff's omission of these developments in the TAC is particularly remarkable because they are explicitly described in the provided link to the HHS Bulletin: "Specifically, the Court vacated the guidance to the extent it provides that HIPAA

obligations are triggered in 'circumstances where an online technology connects (1) an individual's IP address with (2) a visit to an a[n] [unauthenticated public webpage] addressing specific health conditions or healthcare providers.'" *Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates*, U.S. Dep't of Health and Human Services (Dec. 1, 2022), https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html, cited at TAC ¶ 53 n.8. This vacatur directly implicates the quoted portions of the bulletin in the TAC. *See* TAC ¶¶ 53-54. Accordingly, the Court should disregard these portions of the TAC.

In the TAC, Plaintiff asserts five causes of action: (1) violations of §§ 56.06, 56.101, and 56.10 of the CMIA; (2) violation of § 1798.150(a)(1) of the CCPA; (3) aiding and abetting violation of § 631 of the CIPA; (4) violation of § 632 of the CIPA; and (5) violation of the California Constitution, Article I, § 1. The claims are brought on behalf of a putative class of "[a]ll California residents who, while located within California…visited and used the Headway website and whose health information and/or other personal data was intercepted by, or disclosed to, Google through Google's tracking technology embedded in the Headway website." TAC ¶ 63.

Plaintiff's original CMIA claim, as well as his aiding and abetting claim under the CMIA, were previously dismissed by this Court, and Plaintiff does not renew the aiding and abetting claim here. *See* ECF No. 50 at 26:6-27:9. Plaintiff also does not renew his CCPA claim under §§ 1798.100(c) or 1798.81.5(b), which were previously dismissed with prejudice by this Court (*see* ECF No. 44 at 14:4-5), and instead brings his CCPA claim under § 1798.150(a)(1). *See* ECF No. 55 at 23:3-4.[1] Defendant moves to dismiss Claim 1, the CMIA claim, and Claim 2, the CCPA claim.

## III.    LEGAL STANDARD

Rule 12(b)(6) dismissal is proper if a complaint fails to state a claim upon which relief can be granted and when the complaint lacks a "cognizable legal theory" or sufficient factual allegations to "support a cognizable legal theory." *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652-53 (9th Cir. 2019). To survive dismissal, the complaint "must contain sufficient 'well-pleaded, nonconclusory factual allegation[s],' accepted as true, to state 'a plausible claim for relief.'"

_____

[1] Plaintiff has also removed his request for money damages for his California constitutional privacy claim. *See* ECF No. 55 at 31:26-32:2.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Beckington v. Am. Airlines, Inc.*, 926 F.3d 595, 604 (9th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679-80 (2009)). Factual allegations must raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## IV.    ARGUMENT

### A.    Plaintiff's CMIA Claim Must Be Dismissed

Plaintiff realleges the same three violations of the CMIA: (1) § 56.06(f), which states that "[a]ny business described in this section shall maintain the same standards of confidentiality required of a provider of health care with respect to medical information disclosed to the business;" (2) § 56.101(a), which states that "[a]ny provider of health care…who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties" in § 56.36(b) and (c); and (3) § 56.10(a), which states that "[a] provider of health care…shall not disclose medical information regarding a patient of the provider of health care…without first obtaining an authorization[.]" The Court previously dismissed Plaintiff's CMIA claim because Plaintiff did not demonstrate he shared "substantive information" regarding his "medical condition, history, or treatment." *See* ECF No. 44 at 5:21-23. The TAC does not rectify the defects in Plaintiff's CMIA claim, which should be dismissed with prejudice.

#### 1.    *Plaintiff Fails to Allege Any Medical Information or Medical Records Have Been Transmitted to Google*

The CMIA defines "medical information" as "individually identifiable information… regarding a patient's medical history, mental health application information…mental or physical condition, or treatment." Cal Civ. Code § 56.05(j). California District Courts have established clear limits on this definition: "[M]edical information cannot mean just any patient-related information held by a health care provider, but must be 'individually identifiable information' and also include 'a patient's medical history, mental or physical condition, or treatment.' This definition does not encompass demographic or numeric information that does not reveal medical history, diagnosis, or care." *Eisenhower Med. Ctr. v. Super. Ct.*, 226 Cal. App. 4th 430, 435 (2014). "[T]his information must be 'substantive'" and "information about [an] appointment cannot be said to constitute information regarding treatment." *Wilson v. Rater8, LLC,* No. 20-cv-1515-DMS-LL, 2021 WL

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

4865930, at *1, 4-5 (S.D. Cal. Oct. 18, 2021) (disclosure of name, phone number, physician names, appointment information, and discharge dates and times "is insufficient to allege disclosure of medical information under the CMIA.").

The authorities relied on by this Court in dismissing Plaintiff's claim identify the type of information that is substantive enough to constitute medical information. *See* ECF No. 44 at 5:4-10, citing *B.K. v. Desert Care Network*, No. 223-cv-05021-SPGPDX, 2024 WL 1343305, at *5 (C.D. Cal. Feb. 1, 2024) (finding that use of "patient portals to schedule appointments, refill prescriptions, and to view [plaintiffs'] test results and appointment notes" were sufficient to support a CMIA claim); *Tamraz v. Bakotic Pathology Assocs., LLC*, No. 22-CV-0725-BAS-WVG, 2022 WL 16985001, at *5 (S.D. Cal. Nov. 16, 2022) (finding that disclosure of "specimen or test information" was substantive medical information within the meaning of CMIA).

In *Tamraz*, the court specifically differentiated the allegation regarding disclosure of "specimen or test information" from allegations regarding disclosure of the plaintiff's "full name, date of birth, address, telephone number, and email address; (2) health insurance information…(3) medical information, such as medical record number, dates of service, provider and facility names…and (4) billing and claims information," determining the later categories were not medical information under the CMIA. *Id.* Similarly, in *Doe v. Davita Inc.*, the court concluded the alleged disclosure of a misdiagnosis grievance, online activity researching types of dialysis treatment, watching videos necessary to receive treatment, researching recipes for a dialysis diet, and the location of the treatment facility was not enough for a CMIA claim. No. 23-cv-01424-AJB-BLM, 2024 WL 1772854, at *1-2 (S.D. Cal. Apr. 24, 2024); *see also Rossi v. Sequoia Union Elementary School*, 94 Cal. App. 5th 974, 997 (Ct. App. 2023) (dismissing CMIA claim "[w]ithout any factual allegations that defendants received any medical information, such as medical records, a medical certification, or other information in electronic or physical form…derived from a provider of health care.") (cleaned up); *Gibson v. Planned Parenthood Federation of America, Inc.*, No. 3:23-cv-04529-JD, 2024 WL 4251892, at *1 (N.D. Cal. July 2, 2024) (dismissing CMIA claim based on allegations that Plaintiff used defendant's website to schedule appointments and research services); *Doe v. MKS Instruments, Inc.*, No. SACV 23-00868-CJC (KESx), 2023 WL 9421115, at *2 (C.D.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

13

Cal. Nov. 3, 2023) ("[I]nformation about disabilities, health and medical conditions…" was not considered "substantive information regarding any medical condition that Plaintiff has or his medical history."); *Wilson*, 2021 WL 4865930, at *5 ("[I]nformation about the appointment cannot be said to constitute information regarding treatment" without "facts that would allow the Court to infer that [plaintiff] received medical treatment during that examination.").

Here, the information allegedly disclosed is not substantive medical information protected by the CMIA. All Plaintiff has alleged is that he searched for a provider on Defendant's publicly available website based on the provider's mental health specialty, including "stress, trauma, and past abuse," "depression, anxiety, stress, and lack of sleep;" and "stress at work and marital issues;" "medical insurance" accepted, and other characteristics such as that "he was looking for general therapy, preferably with a female therapist of color, who was located within his local area, and who offered online therapy sessions." TAC ¶¶ 10-12. During this search process, Plaintiff alleges he entered demographic information, including "his name, address, cellular telephone number, age, marital status, ethnicity, religion, occupation, employer, and income range" as well as information contained on his driver's license. *Id.* ¶¶ 9-10. However, Plaintiff never scheduled or attended an appointment through Defendant's website. Plaintiff's allegations fail because he does not allege any "facts that would allow the Court to infer that he received medical treatment during [an appointment]." *Wilson*, 2021 WL 4865930, at *5 ("Describing an examination as treatment does not make it so."). The type of information allegedly disclosed is far more similar to the information deemed not substantive in *Tamraz*, including "the plaintiff's "full name, date of birth, address, telephone number, and email address;" "health insurance information;" "dates of service, provider and facility names;" and "billing and claims information" than it is to the "specimen or test information" that was considered substantive medical information. 2022 WL 16985001, at *5. As such, the allegedly disclosed information is not "'substantive information' regarding [Plaintiff's] 'medical condition, history, or treatment." *See* ECF No. 44 at 5:22-23 (dismissing CMIA claim).

Furthermore, the information that Plaintiff alleges was transmitted to Google relates to webpages and their contents—mere ***browsing information***—which is insufficient to state a CMIA claim. *See Smith v. Facebook, Inc.*, 262 F. Supp. 3d 943, 954-55 (N.D. Cal. 2017), aff'd 745 Fed.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

App'x 8 (9th Cir. 2018) (disclosure of browsing history on public websites did not disclose protected health information because "[t]hese pages contain general health information that is accessible to the public at large"). "Information available on publicly accessible websites stands in stark contrast to the personally identifiable patient records and medical histories protected by these statutes—information that unequivocally provides a window into an individual's personal medical history." *Id.* at App'x 8, 9. Such information "show[s] only that Plaintiffs searched and viewed publicly available health information[, which] cannot, in and of itself, reveal details of an individual's health status or medical information." *Id.*; *see also Davita Inc.*, 2024 WL 1772854, at *1-2 (dismissing CMIA claim where plaintiffs alleged "medical information requested or viewed by patients, the title of any buttons they clicked, the exact phrases users typed into text boxes, [and] selections they made from drop-down menus or while using filtering tools" was disclosed via tracking technologies); *K.L. v. Legacy Health*, No. 3:23-cv-01886-SI, 2024 WL 4794657, at *4 (D. Or. Nov. 14, 2024) ("[G]eneric search queries created during…browsing activity [on a public website], however, do not constitute PHI"). This is because searching for information about a condition, or a potential treater, does not reveal that the person conducting the search has that condition. *See Valladolid v. Memorial Health Servs.*, No. 23STCV05059, slip op. at 4-5 (Cal. Super. Ct. Nov. 20, 2024) (included as Ex. A in the Appendix of Authority).

Plaintiff further concludes without factual support that certain information could be transmitted to Google simply because he and hypothetical users searched for it or entered it into Defendant's website. Plaintiff's failure to allege how Google Analytics was configured and what information was actually transmitted to Google as a result of that configuration dooms Plaintiff's claims; this sort of speculation "do[es] not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678-79. Specifically, "Plaintiff's allegations that the presence of [Google Analytics] on Defendant's website, combined with [Defendant's] purported configurations of [Google Analytics], resulted in the disclosure of [his] personal information, is generic and devoid of factual support. In fact, [his] grievances regarding [Google Analytics] are not based on particularized occurrences but are based 'on information and belief' rather than any factual support." *Doe v. Amgen, Inc.*, No. 2:23-cv-07448-MCS-SSC, 2024 WL 575248, at *3 (C.D.

15

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Cal. Jan. 29, 2024) (cleaned up); TAC ¶¶ 25-31 (describing how Google Analytics works generally); ¶¶ 35-37 (describing how Google Analytics could work on Defendant's website, based on hypothetical users); ¶¶ 15, 42, 123 (relying on "information and belief" arguments regarding the purpose and function of Google Analytics). *See also Kurowski v. Rush System for Health*, No. 22 C 5380, 2023 WL 2349606, at *5-6 (N.D. Ill. Mar. 3, 2023) (dismissing wiretap claim where "the hypotheticals provided by [plaintiff] appear to illustrate only what occurs when an individual—whether a patient or not—clicks on certain areas of [the] public website"). Plaintiff's allegation that his information was transmitted to Google is speculative, and his CMIA claim should be dismissed.

### 2. Plaintiff Fails to Allege Anyone Viewed Any Medical Information

Plaintiff's allegation that his data was processed, aggregated, and organized by Google (TAC ¶ 29)—an allegation completely unchanged from his previous complaints—is insufficient to satisfy the viewing element of his CMIA claim. *See, e.g.*, *Sutter Health v. Sup. Ct.*, 227 Cal. App. 4th 1546, 1557 (2014) (no CMIA claim where no allegation that anyone ever viewed medical information exposed in a data breach); *Regents of Univ. Cal. v. Sup. Ct.*, 220 Cal. App. 4th 549, 570 (2013) (no CMIA claim where patient could not "allege her medical records were, in fact, viewed by an unauthorized individual"). In *Sutter Health*, 227 Cal. App. 4th at 1557, computers containing medical records were stolen, but there was no evidence the records were actually viewed. The *Sutter* court explained that "[n]o breach of confidentiality takes place until an unauthorized person views the medical information[;] [w]ithout an actual breach of confidentiality, the loss of possession is not actionable under section 56.101." *Id.* Similarly, the *Regents* court explained that a plaintiff must plead "that the confidential nature of the plaintiff's medical information was breached." 220 Cal. App. 4th at 570. Yet another California court also recently dismissed a CMIA claim for the same reason:

> [T]he information may be collected, analyzed, and used by a third party for its own benefit, all through the use of computers, without any human actually laying eyes on it. Plaintiffs have not alleged that the information was "actually read" within the meaning of Sutter Health. Plaintiffs conclude that someone must have viewed the data at Facebook in order to compile the datasets for advertisers, the complaint does not specifically allege this. It does allege that the information was used by a third party and used for its own benefit, *i.e.*, for marketing purposes. However, in the absence of allegations that the information was "actually read," Plaintiffs have failed to allege facts sufficient to state a violation of the CMIA.

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*Barbour v. John Muir Health*, No. C22-01693, 2023 WL 2618967, at *7-8 (Cal. Super. Ct. Jan. 5, 2023). Similarly here, there is no allegation that any *person* at Google has ever viewed Plaintiff's data; Plaintiff alleges only that Google used his data to somehow improve its own offerings. TAC ¶ 31. However, general allegations about a company's business model, without facts demonstrating how the company has used the specific Plaintiff's data, are insufficient. *See Quinto v. Regents of the Univ. of Cal.*, No. 22CV012970, 2023 WL 5803653, at *2 (Cal. Super. Ct. Sept. 1, 2023); *Roe v. Amgen Inc.*, No. 2:23-cv-07448, 2024 WL 2873482, at *5 (C.D. Cal. June 5, 2024) (finding that unauthorized disclosure alone was not sufficient for court to presume that information had been viewed); *Vigil v. Muir Medical Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 213 (2022) (CMIA claim "requires a showing that an unauthorized party viewed the confidential information"); *compare Doe v. N. Cal. Fertility Medical Ctr.*, No. 22-cv-01861, 2024 WL 246178, at *7 (E.D. Cal. Jan. 23, 2024) (contrasting *Sutter Health* because Plaintiff alleged her PHI was viewed by cybercriminals).

## B.    The CCPA Claim Must Be Dismissed

Plaintiff amended his CCPA claim, now bringing it under Cal. Civ. Code § 1798.150(a) ("Personal Information Security Breaches"), as this Court dismissed the claims brought under Cal. Civ. Code § 1798.100(e) and § 1798.81.5(b). *See* ECF No. 44 at 14:4-5. The CCPA provides a private right of action for "[a]ny consumer whose **nonencrypted and nonredacted personal information**… is subject to an **unauthorized** access and exfiltration, theft, or disclosure **as a result of the business's violation** of the duty to **implement and maintain reasonable security procedures and practices**…." Cal. Civ. Code § 1798.150(a) (emphasis added). Plaintiff has failed to sufficiently plead a CCPA claim, and his claim should be dismissed with prejudice.

### 1.    Defendant is Exempt from the CCPA

Several entities are exempt from the CCPA. Specifically, the CCPA does not apply to "a provider of health care governed by the [CMIA]" or "a covered entity" or "business associate of a covered entity" "governed by [HIPAA] privacy, security, and breach notification rules." Cal. Civ. Code §§ 1798.145(c)(1)(B), 1798.146(a)(2)-(3); *see also Lynch v. Express Scripts Holding Co.*, No. 23-cv-01170-AMO, 2024 WL 3226793, at *2 (N.D. Cal. June 28, 2024) (noting inconsistency between CMIA "provider of health care" and CCPA "business"); *Tate v. EyeMed Vision Care,*

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

*LLC*, Nos. 1:21-cv-36, 2023 WL 6383467, at \*9-10 (S.D. Ohio Sept. 29, 2023) (dismissing CCPA claim against "covered entity subject to HIPAA"); *Mullinex v. US Fertility, LLC*, No. SACV 21-00409-CJC (KESx), 2021 WL 4935975, at \*5 (C.D. Cal. Apr. 21, 2021) (dismissing CCPA claim against HIPAA business associate). The CCPA definition of "personal information" also does not apply to CMIA "provider[s] of health care" or HIPAA "covered entit[ies]." *See* Cal. Civ. Code § 1798.81.5(e); *Lurry v. PharMerica Corp*, No. 3:23-cv-297-RGJ, 2024 WL 2965642, at \*11-12 (W.D. Ky. June 12, 2024) (dismissing CCPA claim against HIPAA covered entity).

According to Plaintiff, "Headway is deemed to be a provider of health care" under the CMIA and is also governed by HIPAA privacy, security, and breach notification rules. TAC ¶¶ 53-54, 83. As such, Defendant is not subject to CCPA obligations and Plaintiff's claim fails.

### 2.    *Defendant is Not a "Business" Governed by the CCPA*

Should the Court decline to apply the above exemptions, Plaintiff nevertheless has failed to plead that Defendant is a "business" under the CCPA. The CCPA defines "business" as a for-profit corporation "that collects consumers' personal information, or on the behalf of which such information is collected and that alone, or jointly with others, determines the purposes and means of the processing of consumers' personal information." Cal. Civ. Code § 1798.140(d). "In other words…[Defendant] must: (1) collect PII and (2) determine why and how the PII should be processed." *In re NCB Mgmt. Servs., Inc. Data Breach Litig.*, No. 23-1236, 2024 WL 4160349, at \*16 (E.D. Pa. Sept. 11, 2024). The CCPA defines "processing" as "any operation or set of operations that are performed on personal information…whether or not by automated means." *Id.* at \*18; Cal. Civ. Code § 1798.140(y). "Without any allegations as to what [Defendant] decides or 'determines' with respect to processing Plaintiffs' PII, the Court cannot find that the Complaint has alleged that [Defendant] is a 'business'" under the CCPA. *In re Accellion, Inc. Data Breach Litig.*, 713 F. Supp. 3d 623, 641 (N.D. Cal. 2024). Furthermore, "the duty of 'reasonable security procedures and practices' imposed on businesses only runs to the personal information that the business collects." *Id.* at 643 (citing Cal. Civ. Code § 1798.100(e)).

The TAC does not allege that Defendant determined how and why Plaintiff's data should be "processed." The TAC only alleges as follows: (1) Defendant installed Google Analytics on its

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

website; and (2) the Google Analytics code "simultaneously" "intercepted" "in real time while it is in transit" Plaintiff's interactions with Defendant's website and sent that information to Google. *See, e.g.*, TAC ¶¶ 4-5, 13, 28, 35.[2] The TAC does not say anything about how ***Defendant*** processed or used Plaintiff's information; it only alleges that ***Google*** processed Plaintiff's data after interception. *See, e.g.*, TAC ¶¶ 29-30. Indeed, because Plaintiff alleges that his data was simultaneously transmitted to Google, Defendant could not have had the chance to process the data allegedly disclosed to Google. *See Accellion*, 713 F. Supp. 3d at 643 (concluding that, because the data collected by the Defendant was not the data allegedly disclosed, there was no CCPA violation).

The *Accellion* and *NCB Mgmt. Servs.* cases both demonstrate the types of allegations that are not sufficient to show that a defendant "processes" data. In *Accellion*, plaintiff alleged that Accellion "developed, marketed, and sold a file sharing transfer software product" that "facilitate[d] secure, encrypted file sharing." 713 F. Supp. 3d at 641. The court rejected the argument that Accellion had processed the data in question, concluding that Accellion's product did not "perform[] any operation *on* the information that it transfers." *Id.* at 642. Similarly, in *NCB Mgmt. Servs.*, the court concluded that "[t]he allegation that NCB used [plaintiffs'] PII to provide its debt collection services to the Bank Defendants is a far cry from alleging it played any role in determining how to process the plaintiffs' PII." 2024 WL 4160349, at *18.

In contrast, the courts in *In re Blackbaud, Inc. Cust. Data Breach Litig.* and *Karter v. Epiq Systems, Inc.*—distinguished by the *Accellion* and *NCB Mgmt. Servs.* courts—concluded that the defendants made determinations about processing plaintiffs' data. In *Blackbaud*, the defendant allegedly "use[d] consumers' personal data to provide services at customers' requests, as well as to develop, improve, and test [its] services;" "develop[ed] software solutions to process its customers' patrons' personal information;" and "offer[ed] professional and managed services in which its expert consultants provide[d] data conversion, implementation, and customization services…" *NCB Mgmt. Servs.*, 2024 WL 4160349, at *18 (distinguishing *Blackbaud*, No. 3:20-mn-02972-JMC, 2021 WL 3568394, at *5 (D.S.C. Aug. 12, 2021)). And in *Karter*, the defendant allegedly

---

[2] Defendant does not concede its argument, made in its first Motion to Dismiss, that the use of tracking technologies does not result in an "interception," but identifies Plaintiffs' allegations as written in the TAC. *See Smith*, 262 F. Supp. 3d at 951.

"worked with its clients to determine how it would use the consumers' PII to provide class notice and manage claims and opt-outs." *NCB Mgmt. Servs.*, 2024 WL 4160349, at \*18 (distinguishing *Karter*, No.: SACV 20-01385-CJC (KESx), 2021 WL 4353274, at \*2 (C.D. Cal. July 16, 2021)); *see also Accellion*, 713 F. Supp. 3d at 641-42 (distinguishing both *Karter* and *Blackbaud* because those defendants were "alleged to have actively interacted with and analyzed the data at issue").

No such allegations are included here. Plaintiff says nothing about any operations Defendant performed on Plaintiff's information, nor about any determinations made regarding how Plaintiff's data should be processed. *Id.* at 641. As such, Plaintiff has not alleged that Defendant ever "processed" the data allegedly disclosed to Google; nor could it have, given that Plaintiff alleges Google received the information simultaneously with Defendant. *See, e.g.*, *id.* at 643; TAC ¶¶ 4-5, 13, 28, 35. Accordingly, Plaintiff's CCPA claim should be dismissed.

### 3.    *Plaintiff Has Failed to Plead a Personal Information Security Breach*

The CCPA's private right of action allows consumers to obtain damages from business storing their personal data in situations of "Personal Information **Security Breaches**." Cal Civ. Code § 1798.150 (emphasis added); *see also McCoy v. Alphabet, Inc.*, No. 20-cv-05427, 2021 WL 405816, at \*8 (N.D. Cal. Feb. 2, 2021) ("[P]rivate right of action…is related to personal information security breaches."). This right of action only applies to "nonencrypted and nonredacted personal information" subject to an "unauthorized…disclosure" "as a result" of a business's failure to "implement and maintain reasonable security procedures." Cal. Civ. Code § 1798.150.

These elements—all of which Plaintiff has failed to plead—indicate that the CCPA was created to protect consumers from third parties not authorized by either the consumer *or the business* to access consumers' data, not from third parties the business allows to access this data. *See Hayden v. Retail Equation, Inc.*, No. SA CV 20-01203-DOC-DFM, 2022 WL 2254461, at \*5 (C.D. Cal. May 4, 2022) (reconsideration on other grounds) (dismissing CCPA claim where "the disclosure of personal information was not unauthorized for the purposes of § 1798.150(a)" because the third parties had the business's consent to access the data); *McCoy*, 2021 WL 405816, at \*1, 8 (dismissing CCPA claim where Google allegedly authorized the use of an internal program, not authorized by Plaintiffs, to collect users' data while using non-Google apps because this was not a

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

"security breach"); *In re TikTok, Inc., Cons. Priv. Litig.*, 617 F. Supp. 3d 904, 923 (N.D. Ill. 2022) (the CCPA private right of action is only for "a defendant's failure to prevent data breaches, not for unauthorized collection of personal information."). The CCPA also defines "security and integrity" as "the ability of: (1) Networks or information systems to detect security incidents that compromise the availability, authenticity, integrity, and confidentiality of stored or transmitted personal information[;] (2) Businesses to detect security incidents, resist malicious, deceptive, fraudulent, or illegal actions and to help prosecute those responsible for those actions[;] (3) Businesses to ensure the physical safety of natural persons." Cal. Civ. Code § 1798.140(ac). These all refer to a business's defenses against third-parties that have not received access to consumer information.

It should come as no surprise, therefore, that CCPA claims are most often successful at the dismissal stage in the context of data security breaches involving third parties without either the consumer or the business' authorization. *See, e.g.*, *Durgan v. U-Haul Int' Inc.*, No. CV-22-01565-PHX-MTL, 2023 WL 7114622, at *1 (D. Ariz. Oct. 27, 2023) (data accessed by "unknown hackers" through a "cyber-attack"); *In re Arthur J. Gallagher Data Breach Litig.*, 631 F. Supp. 3d 573, 580-81 (N.D. Ill. 2022) (data accessed by an "unknown party" through a "cybersecurity attack"); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 905-06 (S.D. Cal. 2020) (an accidental "large data breach" resulted in Plaintiffs' information "being posted on the Internet"); *Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013, 2021 WL 6882377, at *1 (N.D. Cal. May 6, 2021) (consumer funds stolen by "unauthorized users" through multiple "security breaches"); *In re Eureka Casino Breach Litig.*, No. 2:23-cv-00276-CDS-BNW, 2024 WL 4253198, at *1 (D. Nev. Sept. 19, 2024) (plaintiffs alleged "cybercriminals gained unauthorized access…"); *In re San Francisco 49ers Data Breach Litig.*, No. 3:22-cv-05138-JD, 2024 WL 3849336, at *1 (N.D. Cal. Aug. 15, 2024) (consumer information "was hacked in a data breach").

As the Court's Order noted, however, CCPA claims are also brought in situations where a consumer's data is accessed outside the context of a large electronic data breach. *See* ECF No. 44 at 14:13-26; *see also Ramos v. Wells Fargo Bank, N.A.*, No. 23-CV-0757-L-BGS, 2023 WL 5310540, at *2 (S.D. Cal. Aug. 17, 2023) ("Due to Defendant's failure to properly maintain Plaintiff's personal information, unknown individuals accessed Plaintiff's account and withdrew funds").

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

What all of these cases have in common is that the third-party access to the consumer's data was not authorized by either the consumer or the business. This is fundamentally different from Plaintiff's allegations that Defendant authorized the disclosure of Plaintiff's data to Google Analytics. TAC ¶ 4; *see Hayden*, 2022 WL 2254461, at *5; *McCoy*, 2021 WL 405816, at *8. As such, the disclosure of Plaintiff's data cannot be considered "unauthorized" under the CCPA.

Plaintiff may attempt to rely on *In re BetterHelp, Inc. Data Disclosure Cases*, No. 23-cv-01033-RS, 2024 WL 3416511, at *4-5 (N.D. Cal. July 15, 2024). This case, which summarily concluded without analysis that allegations regarding the use of tracking technologies are sufficient to plead a CCPA violation, is an outlier among the persuasive authority cited herein. *BetterHelp* also does not grapple with many of Defendant's arguments in favor of dismissal, including that Defendant is exempt from the CCPA and that Defendant is not a "business" under the CCPA. Given the court's minimal analysis in *BetterHelp*, this Court should follow the authorities cited herein.

Because the facts here are not a "security breach" that CCPA was designed to prevent, it is no surprise that Plaintiff still fails to plead key CCPA elements. Most glaringly, Plaintiff has not pled that the alleged unauthorized disclosure occurred "as a result of [Defendant's] violation of the duty to implement and maintain reasonable security procedures and practices." Cal. Civ. Code § 1798.150(a). Plaintiff must plead facts demonstrating that the defendant's security procedures and practices ***caused*** the unauthorized disclosure. *See Hayden*, 2022 WL 2254461, at *5 (no CCPA claim because disclosure was not the result of a failure to implement and maintain reasonable security measures, but a business decision to combat fraud); *Gershfeld v. Teamviewer US, Inc.*, No. SACV 21-00058-CJC(ADSx), 2021 WL 3046775, at *2 (C.D. Cal. June 24, 2021) (no CCPA claim because "disclosure of Plaintiff's personal information was not caused by" storing the information "in a nonencrypted and nonredacted fashion"); *Udo v. Wells Fargo Bank, N.A.*, No. 23-cv-02935-JSW, 2023 WL 8600791, at *3 (N.D. Cal. Dec. 12, 2023) (dismissing CCPA claim because plaintiff "fails to include facts that show the disclosure of any of his 'personal information' was 'the result of' Defendants' conduct"); *In re Bank of Am. Cal. Unemploy. Benefits Litig.*, No. 21-md-2992-LAB-MSB, 2023 WL 3668535, at *14 (S.D. Cal. May 25, 2023) (no CCPA claim when defendant's security procedures ***may*** have been why plaintiffs' data was stolen) (emphasis added).

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

Beyond causation, plaintiffs must also allege why a defendant's security procedures are inadequate. *See Razuki v. Caliber Home Loans, Inc.*, No. 17cv1718-LAB (WVG), 2018 WL 6018361, at *1-2 (S.D. Cal. Nov. 15, 2018) (no CCPA claim where plaintiff does not provide "any facts about [defendant's] protocols or actions it took when choosing appropriate security measures."); *Anderson v. Kimpton Hotel & Restaurant Grp., LLC*, No. 19-cv-01860-MMC, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing claim where plaintiffs failed to allege facts showing Defendant failed to implement and maintain reasonable security procedures); *Chen v. JPMorgan Chase Bank, N.A.*, No. 2:23-cv-10874-SPG-AS, 2024 WL 4004999, at *4-*5 (C.D. Cal. Aug. 20, 2024) (dismissing CCPA claim where plaintiffs did not make "specific allegations" about defendant's security procedures); *Griffey v. Magellan Health Inc.*, 562 F. Supp. 3d 34, 57 (D. Ariz. 2021) (dismissing CCPA claim in part because plaintiff "did not allege sufficient facts to establish how or why [defendant's] systems were inadequate or unreasonable or how or why [defendant] knew or should have known its systems were inadequate or unreasonable."); *contra In re Eureka Casino Breach Litig.*, 2024 WL 4253198, at *12 (sufficient allegations for CCPA claim included that Defendant "(1) failed to encrypt the plaintiffs' PII…(2) failed to adhere to FTC guidelines, including…requiring complex passwords…(3) failed to follow industry standards, including failing to install malware detection software, failing to set up network firewalls…"). Additionally, the argument that, because there was a breach or disclosure, data security was inadequate, is insufficient to state a claim. *Griffey*, 562 F. Supp. 3d at 57 (rejecting argument that "because there was a breach, [defendant's] data security was inadequate.").

In contrast, the TAC does not contain any mention of Defendant's security procedures and practices, much less any "facts to establish how or why [Defendant's] systems were inadequate or unreasonable." *Id.* Instead, Plaintiff recites, almost verbatim, the elements of the statute, stating that "Headway's disclosure to Google of and the unauthorized access by Google to Plaintiff's and Class members' personal information…are violations of Headway's duty to implement and maintain reasonable security procedures and practices…." TAC ¶ 99. This allegation is entirely conclusory and devoid of any of the required pleading elements. Furthermore, the fact that the TAC contains ***no*** allegations about Defendant's security practices indicates that there was no "personal

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
LOS ANGELES

1    information security breach" within the meaning of the CCPA. *See* 20:15-22:14, *supra*. As such,

2    Plaintiff's CCPA claim should be dismissed. *See, e.g.*, *Udo*, 2023 WL 8600791, at *3 (Simply

3    reciting the elements of the statute is insufficient under *Twombly* and *Iqbal* to state a claim).

4        Similarly, the CCPA private right of action only applies to "nonencrypted and nonredacted

5    personal information." Cal. Civ. Code § 1798.150(a); *see also* Cal. Civ. Code § 1798.81.5 (defining

6    "personal information" to require that either "the name or the data elements are not encrypted or

7    redacted"). Plaintiff acknowledges this requirement but does not allege his information was

8    nonencrypted and nonredacted. *See* TAC ¶ 94; *see generally* TAC. Thus, his CCPA claim should

9    be dismissed. *See Hayden*, 2022 WL 2254461, at *5 ("[T]he plaintiff is required to show that

10   'nonencrypted and nonredacted personal information' was 'subject to an unauthorized access…'").

11       Finally, Plaintiff has not sufficiently pled that an unauthorized disclosure occurred—the

12   same gap that dooms his CMIA claim. *See* Section A.1, *supra*. Plaintiff alleges, without factual

13   support, that the "purported configuration" of Google Analytics on Defendant's website "resulted

14   in the disclosure of [his] personal information." *Doe v. Amgen*, 2024 WL 575248, at *3; TAC ¶¶

15   25-31, 35-37, 15, 42, 123. "On information and belief" arguments are not sufficient because such

16   speculation "do[es] not permit the court to infer more than the mere possibility of misconduct."

17   *Iqbal*, 556 U.S. at 678-79. As such, Plaintiff has failed to allege that any disclosure actually

18   occurred. This is not enough to survive Rule 12(b)(6), and the CCPA claim must be dismissed.

19                    ### 4.    *Plaintiff Fails to Allege Damages Under the CCPA*

20       The CCPA allows for, and Plaintiffs seeks, recovery of statutory or actual damages. Cal.

21   Civ. Code § 1798.150 (a)(1)(A); TAC ¶ 100. The CCPA also contains a cure provision for actions

22   for statutory damages. Cal. Civ. Code 1798.150(b). If, after receiving notice of noncompliance, the

23   defendant "cures the noticed violation [pursuant to the process established in Section

24   1798.150(b)]…no action for individual statutory damages or class-wide statutory damages may be

25   initiated[.]" *Id.* To sufficiently plead statutory damages, Plaintiff must explain why Defendant's

26   actions do not constitute a cure. *See, e.g.*, *In re Waste Mgmt. Data Breach Litig.*, No. 21cv6147,

27   2022 WL 561734, at *6-7 (S.D.N.Y. Feb. 24, 2022) (denying CCPA claim because Plaintiff did

28   "not plausibly allege that [defendant] failed to cure its alleged violations of the CCPA"); *contra In*

*re Sequoia Benefits and Ins. Data Breach Litig.*, No. 22-cv-08217-RFL, 2024 WL 1091195, at *7 (N.D. Cal. Feb. 22, 2024) (finding plaintiffs sufficiently alleged defendant had not cured CCPA violation because "[d]efendants have neither encrypted Plaintiffs' PII nor deleted data that is no longer needed."). The TAC acknowledges Defendant's August 9, 2023 response to Plaintiff's notice of non-compliance, but then simply asserts that Defendant's efforts under § 1798.150(b) did not constitute a cure, without any detail or factual support. TAC ¶ 101. This is not sufficient to make Plaintiff eligible for statutory damages under the CCPA, and his claim should be dismissed.

Plaintiff also has not demonstrated he has suffered actual, pecuniary damages, as required under the CCPA. *See Griffey*, 562 F. Supp. 3d at 57-58 ("[P]laintiff alleges no out-of-pocket expenses. Thus, his case does not present any 'actual pecuniary damages.'"); *Doe v. MKS Instruments, Inc.*, 2023 WL 9421115, at *4 (plaintiff agreeing he failed to allege "actual pecuniary damages"). Courts have routinely found that allegations regarding the value of plaintiffs' data, without allegations that plaintiffs intended to sell their data, are not sufficient to establish damages because their economic loss theory is purely hypothetical. *See, e.g.*, *In re Facebook, Inc. Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 784-85 (N.D. Cal. 2019). Here, Plaintiff does not allege he intended to sell his data. *See* TAC ¶¶ 56-62. Accordingly, Plaintiff has failed to allege that he has suffered actual pecuniary damages, and his CCPA claim should be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Dismiss the TAC pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated: December 6, 2024                    **BAKER & HOSTETLER LLP**

By:      */s/ Teresa C. Chow*
        TERESA C. CHOW
        DYANNE J. CHO

*Attorneys for Defendant*
THERAPYMATCH, INC. d/b/a HEADWAY