1  TERESA C. CHOW (SBN 237694)
   tchow@bakerlaw.com
2  DYANNE J. CHO (SBN 306190)
   dcho@bakerlaw.com
3  **BAKER & HOSTETLER LLP**
   1900 Avenue of the Stars, Suite 2700
4  Los Angeles, California 90067-4301
   Telephone:    310.820.8800
5  Facsimile:    310.820.8859

6  *Attorneys for Defendant*
   THERAPYMATCH, INC. d/b/a HEADWAY
7

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| M.G., individually and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>THERAPYMATCH, INC. d/b/a HEADWAY; and DOES 1 through 100, inclusive,<br><br>Defendant. | Case No.: 3:23-cv-04422-AMO<br><br>**APPENDIX OF AUTHORITY IN SUPPORT OF DEFENDANT THERAPYMATCH, INC. D/B/A HEADWAY'S MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6)**<br><br>*[Filed concurrently with Notice of Motion and Motion to Dismiss, and [Proposed] Order]*<br><br>Date:       April 10, 2025<br>Time:       2:00 p.m.<br>Location:   Courtroom 10<br><br>Third Amended<br>Complaint Filed:    November 6, 2024 |

1  Defendant Therapymatch, Inc. d/b/a/ Headway respectfully submits the instant Appendix
2  of Authority in support of its concurrently filed Motion to Dismiss Plaintiff's Third Amended
3  Complaint Pursuant to Fed. R. Civ. P. 12(b)(6):

4  **Exhibit A:** Nov. 20, 2024 Order re: Demurrer, *Valladolid v. Memorial Health Servs.*, No.
5  23STCV05059, slip op. (Cal. Super. Ct. Nov. 20, 2024).

Dated: December 6, 2024   **BAKER & HOSTETLER LLP**

By:   */s/ Teresa C. Chow*
      TERESA C. CHOW
      DYANNE J. CHO

*Attorneys for Defendant*
THERAPYMATCH, INC. d/b/a HEADWAY

# EXHIBIT A

FILED
Superior Court of California
County of Los Angeles

NOV 20 2024

David W. Slayton, Executive Officer/Clerk of Court
By: N. Navarro, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| MICHELLE VALLADOLID, individually and on behalf of all other persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MEMORIAL HEALTH SERVICES,<br><br>Defendant. | Case No.: 23STCV05059<br><br>ORDER RE DEMURRER<br><br>Date:  November 20, 2024<br>Time:  9:00 a.m.<br>Dept.: SSC 17 |

    Plaintiff Michelle Valladolid alleges Defendant Memorial Health Services aided and abetted third party Facebook in intercepting and recording patients' interactions on Defendant's website. The Second Amended Complaint states three causes of action for violation of the California Invasion of Privacy Act, the Confidentiality of Medical Information Act Civil Code, and the California constitutional and common law right of privacy. Defendant filed a demurrer to all three causes of action.

- 1 -

## I.    <u>**FIRST CAUSE OF ACTION -- CIPA**</u>

The first cause of action alleges violations of Penal Code section 631, subdivision (a). Section 631, subdivision (a) imposes liability upon a person who (1) intentionally taps any telephonic communication system, (2) without the consent of all parties to the communication attempts to learn the contents of a communication while it is in transit, (3) attempts to use or communicate the information so obtained, or (4) aids or conspires with a person to do one of these prohibited acts.

The fourth clause imposes liability for a person who aids another person to unlawfully do one of the acts in the first, second, or third clause. The second clause imposes liability for reading or attempting to learn the contents of a communication "while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within this state." (Penal Code, § 631, subd. (a).) Defendant argues Plaintiff "fails to allege any supporting facts showing that the substantive contents of any communications have ever been transmitted to Meta." (Demurrer at p. 13.)

In *In re Zynga Privacy Litigation* (9th Cir. 2014) 750 F.3d 1098, the plaintiffs alleged the defendants violated the federal wiretap act "by disclosing the HTTP referrer information to third parties." (*Id.* at p. 1105.) The court explained that " 'contents' does not include 'record' information," and that " 'contents' refers to the intended message conveyed by the communication." (*Id.* at p. 1106.) The disclosed information – the HTTP referrer information – included an ID and the address of a webpage, none of which were contents of a communication. (*Id.* at p. 1107.) However, "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to a disclosure of contents of a communication." (*Id.* at pp. 1108-1109.)

In *Mikulsky v. Bloomingdale's LLC* (Jan. 25, 2024 S.D. Cal.) 2024 WL 337180 (an unpublished federal district court case that has zero precedential authority, and given that it is unpublished, very little if any persuasive authority), the plaintiff's interactions on the defendants' website (such as "button clicks, mouse movements, scrolling, resizing, touches (for mobile

browsers), key presses, page navigation, changes to visual elements in the browsers, network requests and more") were record information and not contents of a communication. (*Id.* at p. *7.) In *In re Facebook Internet Tracking Litigation* (N.D. Cal. 2015) 140 F.Supp.3d 922, the plaintiffs alleged the defendant received the user's identification information and a record of browsing history, which the court determined were not "content." (*Id.* at p. 935.)

In *Cousin v. Sharp Healthcare* (Nov. 17, 2023 S.D. Cal.) 2023 WL 8007350 (another unpublished federal district court case), the court held that allegations "the data included personal search queries – such as specialty healthcare providers and treatments for medical conditions – . . . plausibly conveyed content: their PHI." (*Id.* at p. *5.) Likewise, "descriptive URLs" that include the path and a query string with detailed information about the search contain "the substance of a communication." (*In re Meta Pixel Healthcare Litigation* (N.D. Cal. 2022) 647 F.Supp.3d 778, 795-796.)

The SAC alleges Plaintiff "conducted medical research on Defendant's Website relating to her sciatica," including searching for orthopedic surgeons. (SAC, ¶¶ 62, 63.) She "clicked on the profiles of multiple surgeons identified in response to her query." (SAC, ¶ 64.) The SAC alleges "when Plaintiff conducted that research, the third-party software code embedded, integrated and installed into the Website resulted in Facebook intercepting the contents of Plaintiff's communications with Defendant via the Website in the form of full-string, descriptive URLs that detailed the medical searches and research Plaintiff conducted and the results of those searches." (SAC, ¶ 65.)

While these allegations in the SAC could be more precise about exactly what search Plaintiff did on the website, it can be inferred that Plaintiff input search terms relating to "orthopedic surgeons" and Facebook intercepted those search terms. Under the law cited above, such search terms are the contents of Plaintiff's communications.

The third clause imposes liability when a person "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information" obtained via clause two. Defendant argues the complaint does not allege Facebook used Plaintiffs' information from

Plaintiff's communications with Defendant. (Demurrer at p. 15.) However, the SAC alleges Facebook used the information for advertising to Plaintiff. (SAC, ¶¶ 67-69.)

The demurrer is overruled as to the first cause of action.

## II. SECOND CAUSE OF ACTION -- CMIA

The second cause of action alleges Defendant violated Civil Code section 56.10 by allowing third parties to access Plaintiff's medical information. Section 56.10, subdivision (a) prohibits a health care provider from disclosing a patient's medical information without authorization. Section 56.05, subdivision (i) defines "medical information" as "any individually identifiable information . . . regarding a patient's medical history, mental health application information, mental or physical condition, or treatment." "Generally, '[w]he[n] a party relies for recovery upon a purely statutory liability it is indispensable that he plead facts demonstrating his right to recover under the statute. The complaint must plead every fact which is essential to the cause of action under the statute.' [Citation.]" (*Baskin v. Hughes Realty, Inc.* (2018) 25 Cal.App.5th 184, 207.) Defendant argues the SAC does not allege facts showing Plaintiff's medical information was transmitted to a third party. (Demurrer at p. 16.)

Medical information is not the mere fact that a plaintiff has been treated by a particular hospital or doctor. "[T]he fact that an individual's name is on a list released by doctor X or clinic Y" is not sufficient to violate the law because " '[s]uch a construction does not comport with the plain and reasonable meaning of the statute and would render meaningless the clause 'regarding a patient's medical history, mental or physical condition, or treatment.' " (*Eisenhower Medical Center v. Superior Court* (2014) 226 Cal.App.4th 430, 435.) Searching for "publicly available health information ... cannot, in and of itself, reveal details of an individual's health status or medical information." (*Smith v. Facebook, Inc.* (9th Cir. 2018) 745 Fed. Appx. 8, *9.)

The SAC alleges "Plaintiff conducted medical research on Defendant's Website relating to her sciatica," "Plaintiff also used the Website to search for a suitable orthopedic surgeon," and "Plaintiff clicked on the profiles of multiple surgeons." (SAC, ¶¶ 62, 63, 64.) The SAC does not allege that Plaintiff input any search terms including the word "sciatica" or that a "sciatica" search term was transmitted to Facebook. And even if Plaintiff used the word "sciatica" in a search on

Defendant's website, such a search did not disclose that Plaintiff had sciatica. An attempt to self-diagnose a physical condition, or to search for a doctor that treats a particular condition, does not reveal that a person actually has that condition. For example, in recent years, people could feel ill and think they had Covid, but then test negative for Covid. A website search for "Covid" would not disclose that those people actually had Covid or otherwise reveal their physical condition or treatment. A search for "sciatica" reveals only that Plaintiff searched for "sciatica."

Likewise, the allegations that Plaintiff's searches of orthopedic surgeons were transmitted to Facebook do not reveal Plaintiff's medical history, physical condition, or treatment. Orthopedic surgeons treat all kinds of conditions. Further, even if Plaintiff actually saw one of the doctors she identified on Defendant's website, that information is not protected. (*Eisenhower Medical Center, supra*, 226 Cal.App.4th at p. 435.)

The SAC also alleges Plaintiff used Defendant's "patient portal available through the Website, to communicate personal medical information, including Private Information, to Defendant." (SAC, ¶ 61.) But the SAC does not allege that any information Plaintiff transmitted through the patient portal was transmitted to Facebook, nor does the SAC allege what "personal medical information" Plaintiff communicated to Defendant through the patient portal.

Plaintiff's legal authority does not establish Plaintiff sufficiently alleged transmission of Plaintiff's medical information to a third party. Plaintiff argues CMIA "prohibit[s] disclosure of the nature of a patient's treatment." (Opposition at . 12.) But the SAC does not allege anything about Plaintiff's treatment or even that she received any medical treatment.

Plaintiff cites *Colleen M. v. Fertility & Surgical Associates of Thousand Oaks* (2005) 132 Cal.App.4th 1466. (Opposition at pp. 12-13.) That case is about the scope of a patient's reasonable expectation of privacy when she revealed she had received treatment at a fertility clinic, an issue not raised by the demurrer here. (*Colleen M., supra,* 132 Cal.App.4th at p. 1472.)

Plaintiff cites *St. Aubin v. Carbon Health Technologies, Inc.* (N.D. Cal. Oct. 1, 2024) 2024 WL 4369675. (Opposition at p. 13.) That unpublished federal district court stated allegations "that the URLs transmitted to Facebook and Google include . . . the reason patients booked a medical appointment and the location for those appointments" was sufficient to allege disclosure

of "a person's 'mental or physical condition' or a course of treatment falling under the CMIA's definition of 'medical information.' [Citation.]" (*Id.* at p.*9.) Plaintiff does not allege she booked medical appointments which Defendant disclosed.

Plaintiff cites *Cousin v. Sharp Healthcare* (S.D. Cal. 2023) 702 F.Supp.3d 967. (Opposition at p. 13.) That case held that a search for a primary care physician, searches for doctors specializing in some kind of unidentified conditions, and booking an appointment to obtain treatment "plausibly convey information about a present medical condition and the provision of medical care." (*Id.* at p. 973.) The decision reached this vague conclusion without citing California case law and without any meaningful analysis or reasoning. It is not a persuasive opinion.

Plaintiff cites *Wilson v. Rater8, LLC* (S.D. Cal. Oct. 18, 2021) 2021 WL 4865930. (Opposition at p. 14.) In that case, the plaintiff alleged the defendants had disclosed the plaintiff's " 'treating physician names, medical treatment appointment information, and medical discharge dates and times.' " (*Wilson, supra,* 2021 WL 4865930 at p. *5.) The court held this information did not constitute medical information under CMIA. (*Ibid.*) Here Plaintiff does not allege she was actually treated by any of the doctors she searched or had appointments with Defendant's doctors.

The demurrer is sustained to the second cause of action.

### III. THIRD CAUSE OF ACTION -- PRIVACY

The third cause of action alleges Defendant violated the California Constitution's right to privacy and common law privacy rights by disclosing confidential private information to Facebook. (SAC, ¶ 107.)

Article I, section 1 of the California Constitution enumerates a right to privacy." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15.) The elements of a cause of action for violation of the constitutional right to privacy are: "(1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy." (*Id.* at pp. 39-40.) "A privacy violation based on the common law tort of intrusion has two elements. First, the defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second,

the intrusion must occur in a manner highly offensive to a reasonable person." (*Hernandez v. Hillsides, Inc.* (2009) 47 Cal.4th 272, 286.)  A person's medical information is entitled to privacy. (*Hill v. Nat'l Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 41; *Mathews v. Becerra* (2019) 8 Cal.5th 756, 769-770; *Lewis v. Superior Court* (2017) 3 Cal.5th 561, 570; *Medical Bd. of Cal. v. Chiarottino* (2014) 225 Cal.App.4th 623, 631.)

Defendant argues the SAC does not allege disclosure of Plaintiff's medical information and therefore does not allege a serious invasion of privacy. (Demurrer at p. 19.)  Plaintiff argues the disclosure of medical information is a serious invasion of privacy. (Opposition at pp. 17-18.) However, as discussed above, the SAC does not allege disclosure of Plaintiff's medical information.  The demurrer is sustained as to this cause of action.

The demurrer is OVERRULED as to the first cause of action and SUSAINTED as to the second and third causes of action.  Because Plaintiff has not shown how she can remedy the deficiencies in the SAC, no leave to amend is granted. Defendant is to file an answer within 15 days of the date of this order.

Dated: 11/20/2024

*Laura Seigle*
LAURA A. SEIGLE
JUDGE OF THE SUPERIOR COURT